Lawrence E. Henke
David L. Vicevich
Vicevich Law
3738 Harrison Ave.
Butte, MT   59701
Telephone: (406) 782-1111
Fax No.: (406) 782-4000
larry@vicevichlaw.com
dave@vicevichlaw.com
State Bar of MT No. 42337024/4791

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| DEIDRE LECHOWSKI-MERCADO, ) and OWEN MERCADO, ) ) ) ) Plaintiffs, ) ) vs. ) ) SEELEY SWAN HIGH SCHOOL, ) and MISSOULA COUNTY PUBLIC ) SCHOOL DISTRICT, a department ) Of MISSOULA COUNTY, MT ) ) Defendants. ) | Cause No. _____ **COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW the Plaintiffs, Deidre Lechowski-Mercado and Owen Mercado, by and through their counsel, Lawrence E. Henke, and for their Complaint against Defendants, asserts and alleges as follows:

# I.
# Parties

1.  Plaintiff Owen Mercado ("Owen") is and was a resident of Missoula County, at all times pertinent hereto.

2.  Plaintiff Deidre Lechowski-Mercado ("Deidre") is and was a resident of Missoula County, at all times pertinent hereto.

3.  Defendant Seeley Swan High School is a public high school located at 456 Airport Rd., P.O. Box 416, Seeley Lake, MT 59868, located in Missoula County, MT.

4.  Defendant   in Missoula County, MT.

# II.
# Venue and Jurisdiction

5.  Venue is proper in Federal District Court, Missoula Division, pursuant to 28 U.S.C. § 1391(b)(2).

6.  This Court has personal jurisdiction over the parties to this lawsuit because all Defendants conduct their business in the State of Montana.

7.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

8.  All conditions precedent for demand to a county government agency have been satisfied.

# III.
# Summary of the Lawsuit

9.  Verbal bigotry, such as **"NIGGER", "FAGGOT", "FUCKBOI", "FENCE JUMPER"** and/or **"BORDER JUMPER"** are words routinely used by students

and teachers alike at Seeley Swan High School ("SSHS").  These words have been used as an ongoing, school sponsored, discriminative assault against Owen, a minority student at SSHS.

10.  SSHS and Missoula County Public School District ("MCPSD") were made aware of the student activity against Owen, eighteen (18) known offender students were identified to SSHS and MCPSD, and they were advised further that at least three (3) teachers were also discrimination perpetrators, and they – SSHS and MCPSD – did not address the discrimination and harassment in accord with their duties and the law, specifically, but not limited to the Bully-Free Montana Act, M.C.A. §§ 20-5-207 – 20-5-210.

11.  Both SSHS and MCPSD were negligent in the handling of the multiple reports of discrimination and harassment directed toward Plaintiff Owen, which resulted in his severe emotional distress, and predictable and foreseeable severe emotional distress of his mother, Plaintiff Deidre Lechowski-Mercado.  In fact, Deidre has been engaging in a prolonged battle with SSHS and MCPSD to get them to properly react to this discrimination and harassment, but all efforts have been met with recalcitrance and deliberate indifference by SSHS and MCPSD.

12.  SSHS and MCPSD both tolerated and actively participated in discrimination against Owen that targeted (i) Owen's race, (ii) Owen's national origin, (iii) Owen's gender, and (iv) Owen's known and reported disability.

13. Under Federal law, a person's Constitutional rights cannot be infringed by a person or government entity acting under the color of law; any such actor is liable to the individual who the actor "subjects, or causes to be subjected . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

14. The Montana Constitution guarantees "[t]he dignity of the human being is inviolable. No person shall be denied the equal protection of the laws. Neither the state nor any person, firm, corporation, or institution shall discriminate against any person in the exercise of his civil or political rights on account of race, color, sex, culture, social origin or condition, or political or religious ideas." Mont. Const. art. II, § 4.

15. Defendants' systemic tolerance of, and participation in, the ongoing discrimination, and their negligent reaction and response to the reports of the discrimination, displayed a systemic, school-wide pattern and practice of discrimination against Owen in violation of the law.

16. Defendants' chosen path of indifference to the discriminatory actions occurring on school property, tolerance of student discriminatory attacks, acceptance of cyberbullying, and, from at least three separate school employees, active participation in the discriminatory actions, created an environment wherein the discrimination was so tolerated that it became industrialized through the creation

of a SSHS specific web-site/Internet page (instagram.com/13c_meme_page/) created for the explicit purpose of using the Internet, with a SSHS dedicated site, to engage in harassment, discrimination, and degradation of students, including the harassment of Owen.

17. The web-based harassment device – entitled "*13C*" for the SSHS athletic competition district designation – was a direct result of the Defendants' intentional indifference; and, this site was even used by at least one school district employee to cyberbully Owen on the site.

## IV.
## Background Facts

18. Owen was a minority adolescent who attended SSHS, which is a high school within the MCPSD, during the 2018-19 academic year.

19. At the time of his attendance as SSHS, Owen was a minor; he turned 18 in April 2020.

20. Owen is ¼ Afro-Caribbean, meaning that he is considered black for all intents and purposes under the law; he is a member of a protected class under federal and state law.

### Discrimination based on race, color, physical disability, national origin and mental disability

21. In September 2018, SSHS Student HC called Owen a "NIGGER" while they both were on school property and during school hours.

22. SSHS Principal, Dr. Pecora, was informed of the incident involving racial discrimination against Owen as reported by his mother, Deidre, during an in-person meeting with Dr. Pecora.

23. The SSHS Administration conducted no investigation of the racial discrimination, nor did it properly respond to the harassment and discriminatory conduct of the students as required by state law.

24. The SSHS Administration conducted no investigation of the racial discrimination, nor did it properly respond to the harassment and discriminatory conduct of the students as required by school policy.

25. The SSHS Administration did not make a determination whether the reported discriminatory act was subject to the jurisdiction of the school district or another public agency, including law enforcement.

26. The SSHS Administration did not make a referral of the conduct, which is a violation of Montana law, M.C.A. § 20-5-209, BULLYING OF A STUDENT PROHIBITED, to the law enforcement agency with appropriate jurisdiction.

27. The SSHS Administration did not make prompt notification of the alleged victim and the alleged perpetrator, or the parents or guardian of such students if the students were minors.

28. The SSHS Administration did not enact the District procedure, if such procedure exists, to protect the alleged victim of behavior prohibited under the BULLY-FREE MONTANA ACT from further incidents of such behavior.

29. The SSHS Administration did not enforce the disciplinary procedure, if any such procedure exists, establishing the consequences for students found to have committed behavior prohibited under the BULLY-FREE MONTANA ACT.

30. The SSHS Administration did not follow the District procedure, if any such procedure exists, for the use of appropriate intervention and remediation for victims and perpetrators under the BULLY-FREE MONTANA ACT.

31. In September 2018, Students DW and HC call Owen a "BORDER JUMPER" or "FENCE JUMPER" on multiple occasions.  Each of the occasions occurred while they were on school property and during school hours, and the discriminatory comment(s) were offensive and derogatory.

32. These unwanted discriminatory comments, premised on Owen's national origin and race, were reported to Dr. Kathleen Pecora and the MCPSD administration by Deidre in October 2018 during in-person meetings with Dr. Pecora.

33. The SSHS Administration conducted no investigation of the racial discrimination and national origin discrimination, nor did it properly respond to the harassment and discriminatory conduct of the students as required by state law.

34. The SSHS Administration conducted no investigation of the racial discrimination and national origin discrimination, nor did it properly respond to the harassment and discriminatory conduct of the students as required by school policy.

35. The SSHS Administration did not make a determination whether the reported discriminatory act was subject to the jurisdiction of the school district or another public agency, including law enforcement.

36. The SSHS Administration did not make a referral of the conduct, which is a violation of Montana law, M.C.A. § 20-5-209, BULLYING OF A STUDENT PROHIBITED, to the law enforcement agency with appropriate jurisdiction.

37. The SSHS Administration did not make prompt notification of the alleged victim and the alleged perpetrator, or the parents or guardian of such students if the students were minors.

38. The SSHS Administration did not enact the District procedure, if such procedure exists, to protect the alleged victim of behavior prohibited under the BULLY-FREE MONTANA ACT from further incidents of such behavior.

39. The SSHS Administration did not enforce the disciplinary procedure, if any such procedure exists, establishing the consequences for students found to have committed behavior prohibited under the BULLY-FREE MONTANA ACT.

40. The SSHS Administration did not follow the District procedure, if any such procedure exists, for the use of appropriate intervention and remediation for victims and perpetrators under the BULLY-FREE MONTANA ACT.

41. In Fall semester of 2018, Students BS, TC, AS, HC, JL, SJ, and SM called Owen a "FAGGOT" on multiple occasions while they all were on school property and during school hours.

42. The comments from these students were coupled with derogatory and discriminatory accusations of homosexual activity, based on Owen's gender, which included, but were not limited to:

   a.   accusing Owen of having sex with male coaching staff members;

   b.   stating "Owen gets on his knees for Mr. Haines" and accusing him of providing a blow job to Coach Haines;

   c.   accusations of anal sexual intercourse between Owen and Coach Haines; and

   d.   accusations of homosexual interactions between Owen and other coaches describing the act of being "hit it from the back" as a crude description of anal intercourse.

43. This unwanted sexual harassment was reported to SSHS Coach Michael Haines in the Fall semester of 2018 by Owen in person.

44. SSHS and Coach Haines' response was merely to tell Owen to ignore the allegations and sexual harassment.

45. Coach Haines did not investigate the matter, nor did he elevate the matter to the

SSHS Administration.

46. What Coach Haines did do, however, was to tacitly approve of the sexual harassment of Owen, based on his gender, and gave approval to the sexual harassers to engage in more discriminatory conduct.

47. The SSHS Administration conducted no investigation of the sexual harassment, nor did it properly respond to the harassment and discriminatory conduct of the students as required by state law.

48. The SSHS Administration conducted no investigation of the sexual harassment, nor did it properly respond to the harassment and discriminatory conduct of the students as required by school policy.

49. The SSHS Administration did not make a determination whether the reported discriminatory act was subject to the jurisdiction of the school district or another public agency, including law enforcement.

50. The SSHS Administration did not make a referral of the conduct, which is a violation of Montana law, M.C.A. § 20-5-209, BULLYING OF A STUDENT PROHIBITED, to the law enforcement agency with appropriate jurisdiction.

51. The SSHS Administration did not make prompt notification of the alleged victim and the alleged perpetrator, or the parents or guardian of BS, TC, AS, HC, JL, SJ, and SM, if these students were minors.

52. The SSHS Administration did not enact the District procedure, if such procedure exists, to protect the alleged victim of behavior prohibited under the BULLY-FREE MONTANA ACT from further incidents of such behavior.

53. The SSHS Administration did not enforce the disciplinary procedure, if any such procedure exists, establishing the consequences for students found to have committed behavior prohibited under the BULLY-FREE MONTANA ACT.

54. The SSHS Administration did not follow the District procedure, if any such procedure exists, for the use of appropriate intervention and remediation for victims and perpetrators under the BULLY-FREE MONTANA ACT.

55. In the Fall Semester of 2018, female Student AM2 sexually harassed Owen by calling him a "FUCKBOI" [1] and "PLAYER" and "TOOL" and "ASSHOLE" and "PIECE OF SHIT" when referring to Owen to other female students while on school property.

56. These unwanted sexually demeaning and discriminatory comments were reported to Ms. Quinn by the perpetrators themselves in a braggartry manner.

57. Rather than report the incidents to the SSHS Administration as required by policy, however, Ms. Quinn – a SSHS employee and teacher – further stoked the discriminatory comments by encouraging AM2 and her cohorts to continue to make the references because "they were funny."

---

[1] A fuckboy (sometimes stylized "fuckboi" or "fuccboi") is a Millennial derogatory term for a straight male embodying something akin to the "man whore" label and considered disparaging or accusatory of being misogynistic.

58. The SSHS Administration conducted no investigation of the sexual/gender discrimination, nor did it properly respond to the sexual harassment and discriminatory conduct of the students.

59. The SSHS Administration conducted no investigation of the sexual harassment, nor did it properly respond to the harassment and discriminatory conduct of the students as required by state law.

60. The SSHS Administration conducted no investigation of the sexual harassment, nor did it properly respond to the harassment and discriminatory conduct of the students as required by school policy.

61. The SSHS Administration did not make a determination whether the reported discriminatory act was subject to the jurisdiction of the school district or another public agency, including law enforcement.

62. The SSHS Administration did not make a referral of the conduct, which is a violation of Montana law, M.C.A. § 20-5-209, BULLYING OF A STUDENT PROHIBITED, to the law enforcement agency with appropriate jurisdiction.

63. The SSHS Administration did not make prompt notification of the alleged victim and the alleged perpetrator, or the parents or guardian of AM2, if she was a minor.

64. The SSHS Administration did not enact the District procedure, if such procedure exists, to protect the alleged victim of behavior prohibited under the BULLY-FREE MONTANA ACT from further incidents of such behavior.

65. The SSHS Administration did not enforce the disciplinary procedure, if any such procedure exists, establishing the consequences for students found to have committed behavior prohibited under the BULLY-FREE MONTANA ACT.

66. The SSHS Administration did not follow the District procedure, if any such procedure exists, for the use of appropriate intervention and remediation for victims and perpetrators under the BULLY-FREE MONTANA ACT.

67. The SSHS Administration conducted no investigation of the sexual/gender discrimination, nor did it properly respond to the teacher's involvement in the sexual harassment and her overt discriminatory conduct.

68. In March/April of 2019, Owen reported a theft of personal property which occurred on SSHS property; Owen's basketball shoes and prescription goggles were stolen from his SSHS locker.

69. The theft was reported to Dr. Pecora by Deidre in person on the same week the theft occurred.

70. Later, the shoes were found in a Facebook post belonging to SSHS female student AM's brother.

71. The stolen property was reported to police by Owen; SSHS did not report the

theft.

72. The shoes were later returned.

73. SSHS school administrators did not investigate the theft, investigate the possession of stolen property by a SSHS student, nor did it take any remedial action against the thieves.

74. In April 2019, Students BS, TC, AS, HC, JL, SJ, and SM called Owen a "FAGGOT" while they were all on school property.

75. This unwanted sexual harassment was reported to Coach Haines by Owen in person.

76. Coach Haines again responded by telling Owen to ignore the allegations and the sexual harassment, now continuing unabated from the first reporting.

77. Coach Haines did not investigate the matter; he did not elevate the matter to the administration.

78. Coach Haines did not take any remedial action against Students BS, TC, AS, HC, JL, SJ, and SM.

79. Coach Haines' conduct tacitly approved of the sexual harassment of Owen, based on his gender, and gave approval to the known sexual harassers to engage in more discriminatory conduct.

80. The SSHS Administration conducted no investigation of the gender discrimination, nor did it properly respond to the sexual harassment and

discriminatory conduct of the students.

81. The SSHS Administration conducted no investigation of the sexual harassment, nor did it properly respond to the harassment and discriminatory conduct of the students as required by state law.

82. The SSHS Administration conducted no investigation of the sexual harassment, nor did it properly respond to the harassment and discriminatory conduct of the students as required by school policy.

83. The SSHS Administration did not make a determination whether the reported discriminatory act was subject to the jurisdiction of the school district or another public agency, including law enforcement.

84. The SSHS Administration did not make a referral of the conduct, which is a violation of Montana law, M.C.A. § 20-5-209, BULLYING OF A STUDENT PROHIBITED, to the law enforcement agency with appropriate jurisdiction.

85. The SSHS Administration did not make prompt notification of the alleged victim and the alleged perpetrator, or the parents or guardian of BS, TC, AS, HC, JL, SJ and SM, if these students were minors.

86. The SSHS Administration did not enact the District procedure, if such procedure exists, to protect the alleged victim of behavior prohibited under the BULLY-FREE MONTANA ACT from further incidents of such behavior.

87. The SSHS Administration did not enforce the disciplinary procedure, if any such procedure exists, establishing the consequences for students found to have committed behavior prohibited under the BULLY-FREE MONTANA ACT.

88. The SSHS Administration did not follow the District procedure, if any such procedure exists, for the use of appropriate intervention and remediation for victims and perpetrators under the BULLY-FREE MONTANA ACT.

89. The SSHS Administration conducted no investigation of Coach Haines acceptance of the gender discrimination against Owen, nor did it properly respond to the teacher's knowledge of the sexual harassment and discriminatory conduct of the students, but failure to properly investigate and report the harassment in accord with District policies.

90. In April 2019, female Student AM1 called Owen a "FUCKBOI" on multiple occasions. Each of these occurrences occurred while AM1 and Owen were on school property.

91. These unwanted sexually demeaning and discriminatory comments, premised on Owen's gender, were reported to teacher Carissa Quinn in the fall semester of 2019 by AM1 in person to Ms. Quinn.

92. Rather than investigate or report the gender discrimination, Ms. Quinn encouraged AM1 to continue engaging in the discriminatory comments. Ms. Quinn made an approving comment(s) to the effect that it was "funny" or

"entertaining" to make fun of Owen.

93. In addition to encouraging sexual discrimination, Ms. Quinn engaged in conduct that evidenced the SSHS overt approval of the sexual harassment of Owen, based on his gender, and gave approval to the known harassers to engage in more discriminatory conduct.

94. On August 5, 2019, Deidre met in person with new Principal Kellen Palmer in his SSHS office, where she reported to Mr. Palmer each of the Past Occurrences (paragraphs 18 – 93, *supra*) and she expressed significant anger over the SSHS and MCPSD's non-reaction to the accepted and tolerated, pervasive pattern and practice of harassment and discrimination, including the identification of the SSHS Student Tortfeasors who had been positively identified as harassers.

95. On this date, Deidre also advised Principal Palmer of Owen's disability; Palmer was specifically told that Owen suffered from clinical depression – a recognized disability under the AMERICANS WITH DISABILITIES ACT OF 1990 ("ADA", as amended.

96. Deidre made the reasonable accommodation request of SSHS, through a direct plea that the Principal take actions to eliminate the known harassing environment created by SSHS, including the tolerance of the actions of known and identified harassers as of that date, HC, BH1, DW, BH2, BS, TC, AS, JL, SJ, SM, AM1, AM2, Ms. Quinn, and Coach Haines.

97. SSHS violated Title IX, state law, and the internal policies of MCPSD in failing to investigate, properly remediate, and reasonably accommodate Owen's previously known disability, through deliberate indifference, as defined and prohibited by Title IX, the ADA, District policy, and Montana law.

98. SSHS violated the ADA and the Part 35 Nondiscrimination on the Basis of Disability in State and Local Government Services (as amended by the final rule published on August 11, 2016) in failing to investigate, properly remediate, and reasonably accommodate Owen's previously known disability, through deliberate indifference, as defined and prohibited by the ADA.

99. SSHS violated the BULLY-FREE MONTANA ACT in failing to investigate, properly remediate, and reasonably react to the reported bully activity, as defined by M.C.A. § 20-5-208(1)(a) – (c), and under their obligations as mandated by A.R.M. 10.55.719, STUDENT PROTECTION PROCEDURES, demonstrating the SSHS deliberate indifference to the pervasive and severe pattern and practice of discrimination and harassment occurring on school property and by school students, and in at least three cases, by SSHS employees.

100. On August 12, 2019, Owen's car was vandalized in the SSHS parking lot while Owen was at a SSHS-sponsored football camp.

101. The car vandalism was both a criminal damage of another person's property on school property, and an act of sexual harassment on school property.

102. The word "FAGGOT" was written on the car and there were multiple penises drawn on the exterior.

103. The vandalism was witnessed by SSHS Coach Jared Crum, who sent a text message to Owen stating:  "Dude, you u have [sic] pornography art on ur [sic] car."



Dude, u have pornography art
on ur car
Jared Crum, August 12, 2019

104. This was an inappropriate response to a crime having been committed against Owen's property while on school property, and it was an inappropriate response to the obvious sexual harassment of Owen.

105. The failure of SSHS Coach Crum to investigate or report the sexual harassment and criminal incident to the Administration was reported to Principal Palmer by Deidre by e-mail on August 12, 2019.

106. The continued and escalating nature of the harassment was a foreseeable consequence of the SSHS Administration's failure to investigate and respond to prior reports of sexual harassment, racial discrimination, and national origin discrimination by SSHS students and against Owen, while on school property,

during school hours, and while participating in school sponsored activities.

107. The continued and escalating nature of the harassment was a foreseeable consequence of the SSHS Administration's failure to investigate and respond to prior reports of sexual harassment, racial discrimination, and national origin discrimination by at least two, and now a third SSHS employee and against Owen, while on school property, during school hours, and while participating in school sponsored activities.

108. The incident of sexual harassment and vandalism against Owen was not investigated by Principal Palmer; no Title IX follow up was taken by SSHS.

109. Under Montana law, M.C.A. § 45-5-221, a person commits the offense of malicious intimidation or harassment relating to civil or human rights when, because of another person's race, creed, religion, color, national origin, or involvement in civil rights or human rights activities, the person purposely or knowingly, with the intent to terrify, intimidate, threaten, harass, annoy, or offend:

(a) causes bodily injury to another;
(b) causes reasonable apprehension of bodily injury in another; or
(c) damages, destroys, or defaces any property of another or any public property.

M.C.A. § 45-5-221.

110. The criminal conduct on school property was reported to SSHS; however, no actions were taken against the student criminals.

111. SSHS Principal Palmer merely responded to the reported harassing conduct by explaining to the complainant that, inexplicably, the security cameras were not working in the area otherwise covered by security cameras, but he would "look into it" or vague words to that effect.

112. The SSHS inaction was, in fact, a demonstrated approval of the continuing, and escalating, harassment of Owen, based on his gender which served to embolden the known harassers to engage in more discriminatory conduct.

113. The SSHS Administration conducted no investigation of the gender discrimination demonstrated by this act of vandalism, nor did it properly respond to the sexual harassment and discriminatory conduct of the students.

114. The SSHS Administration conducted no investigation of the gender discrimination, nor did it properly respond to the sexual harassment and discriminatory conduct of the students.

115. The SSHS Administration conducted no investigation of the sexual harassment, nor did it properly respond to the harassment and discriminatory conduct of the students as required by state law.

116. The SSHS Administration conducted no investigation of the sexual harassment, nor did it properly respond to the harassment and discriminatory conduct of the students as required by school policy.

117. The SSHS Administration did not make a determination whether the reported

discriminatory act was subject to the jurisdiction of the school district or another public agency, including law enforcement.

118. The SSHS Administration did not make a referral of the conduct, which is a violation of Montana law, M.C.A. § 20-5-209, BULLYING OF A STUDENT PROHIBITED, or M.C.A. § 45-5-221, MALICIOUS INTIMIDATION OR HARASSMENT RELATING TO CIVIL OR HUMAN RIGHTS to the law enforcement agency with appropriate jurisdiction.

119. The SSHS Administration did not make prompt notification of the alleged victim and the alleged perpetrator, or the parents or guardian the students, if these students were minors.

120. The SSHS Administration did not enact the District procedure, if such procedure exists, to protect the alleged victim of behavior prohibited under the BULLY-FREE MONTANA ACT from further incidents of such behavior.

121. The SSHS Administration did not enforce the disciplinary procedure, if any such procedure exists, establishing the consequences for students found to have committed behavior prohibited under the BULLY-FREE MONTANA ACT.

122. The SSHS Administration did not follow the District procedure, if any such procedure exists, for the use of appropriate intervention and remediation for victims and perpetrators under the BULLY-FREE MONTANA ACT.

123. The SSHS Administration conducted no investigation of Coach Crum's

acceptance of the gender discrimination against Owen, the overt message of accepting the gender discrimination against Owen, nor did it properly respond to the coach/teacher's knowledge of the sexual harassment and discriminatory conduct of the students.

124. SSHS and MCPSD's continued failure to properly investigate and react to the harassment in accord with District policies created an environment of not only accepted systemic discrimination, but of overt systemic discrimination by teachers and coaches.

125. In September of 2019, for a second time, SSHS Student HC called Owen a "NIGGER" while they both were on school property.

126. This unwanted racial discrimination was reported, for a second time, to Principal Palmer by Deidre in person in September 2019.

127. The SSHS Administration, for a second time, conducted no investigation of the racial discrimination, nor did it properly respond to the racial bigotry and discriminatory conduct of the student.

128. The SSHS Administration conducted no investigation of the racial discrimination, nor did it properly respond to the harassment and discriminatory conduct of the student as required by state law.

129. The SSHS Administration conducted no investigation of the racial discrimination, nor did it properly respond to the harassment and discriminatory

conduct of the student as required by school policy.

130. The SSHS Administration did not make a determination whether the reported discriminatory act was subject to the jurisdiction of the school district or another public agency, including law enforcement.

131. Under Montana law, M.C.A. § 45-5-220, a person commits the offense of stalking if the person purposely or knowingly engages in a course of conduct **directed at a specific person** and knows or should know that the course of conduct would cause a reasonable person to:

(a) fear for the person's own safety or the safety of a third person; or
(b) **suffer other substantial emotional distress**.

M.C.A. § 45-5-220 (emphasis added)

132. The unwanted, second offense of racial discrimination by HC reported, for a second time, to Principal Palmer in September 2019, was prima facia evidence of a crime having been committed on SSHS property by an SSHS student; the victim student was identified to Palmer; and, the suspect student was identified to Palmer.

133. The SSHS Administration did not make a referral of the conduct, which is a violation of Montana law, M.C.A. § 20-5-209, BULLYING OF A STUDENT PROHIBITED, or § 45-5-220, STALKING, to the law enforcement agency with appropriate jurisdiction.

134. The SSHS Administration did not make prompt notification of the alleged victim and the alleged perpetrator, or the parents or guardian of HC, now a repeat offender, if this student was a minor.

135. The SSHS Administration did not enact the District procedure, if such procedure exists, to protect the alleged victim of behavior prohibited under the BULLY-FREE MONTANA ACT from further incidents of such behavior, exacerbated in this instance by the fact that the offender was a repeat offender.

136. The SSHS Administration did not enforce the disciplinary procedure, if any such procedure exists, establishing the consequences for students found to have committed behavior prohibited under the BULLY-FREE MONTANA ACT.

137. The SSHS Administration did not follow the District procedure, if any such procedure exists, for the use of appropriate intervention and remediation for victims and perpetrators under the BULLY-FREE MONTANA ACT.

138. The SSHS inaction was, in fact, a demonstrated approval of the continuing, and escalating, harassment of Owen, based on his race which served to embolden the known and repeat offender student harasser – HC – who was the reported offender for the same racial discrimination in September 2018, and the SSHS inaction then, as well as now, served to encourage HC to engage in more discriminatory conduct.

139. In September of 2019, Students DG, CG, BH2, CH, and HD call Owen a

"NIGGER" on multiple occasions; all are students and all occurrences occurred while they were on school property.

140. This unwanted racial discrimination was reported to Principal Palmer and MCPSD executive Julie Robitaille on multiple occasions throughout the Fall Semester of 2019 by Deidre via in-person meetings and e-mails throughout September 2019.

141. Neither SSHS nor MCPSD responded in accord with state law, federal law, and District policy.

142. The SSHS Administration conducted no investigation of the racial discrimination, nor did it properly respond to the racially motivated harassment and discriminatory conduct of the students.

143. The SSHS Administration conducted no investigation of the racially motivated harassment, nor did it properly respond to the harassment and discriminatory conduct of the students as required by state law.

144. The SSHS Administration conducted no investigation of the racially motivated harassment, nor did it properly respond to the harassment and discriminatory conduct of the students as required by school policy.

145. The SSHS Administration did not make a determination whether the reported discriminatory act was subject to the jurisdiction of the school district or another public agency, including law enforcement.

146. The SSHS Administration did not make a referral of the conduct, which is a violation of Montana law, M.C.A. § 20-5-209, BULLYING OF A STUDENT PROHIBITED, to the law enforcement agency with appropriate jurisdiction.

147. The SSHS Administration did not make prompt notification of the alleged victim and the alleged perpetrator, or the parents or guardian of DG, CG, BH2, CH, and HD, if these students were minors.

148. The SSHS Administration did not enact the District procedure, if such procedure exists, to protect the alleged victim of behavior prohibited under the BULLY-FREE MONTANA ACT from further incidents of such behavior.

149. The SSHS Administration did not enforce the disciplinary procedure, if any such procedure exists, establishing the consequences for students found to have committed behavior prohibited under the BULLY-FREE MONTANA ACT.

150. The SSHS Administration did not follow the District procedure, if any such procedure exists, for the use of appropriate intervention and remediation for victims and perpetrators under the BULLY-FREE MONTANA ACT.

151. The continued and escalating nature of the harassment was a foreseeable consequence of the SSHS Administration's past failure to investigate and respond to prior reports of sexual harassment, racial discrimination, and national origin discrimination by at least three SSHS employees and an identified cadre of over a dozen students and against Owen, while on school

property, during school hours, and while participating in school sponsored activities.

152. The incident of racial discrimination against Owen was not investigated by Principal Palmer; it was not investigated by MCPSD; and, neither SSHS nor MCPSD did any type of Title VI follow up or response to the reported racial discrimination, despite the fact that the racial harassment was persistent, severe, and/or repeated, and despite the fact the perpetrators were identified.

153. In the Fall Semester of 2019, female student AM2 continued, for now a second time, to sexually harass Owen by calling him a "FUCKBOI" when referring to Owen to other female students while on school property during school hours.

154. These unwanted sexually demeaning and discriminatory comments were reported to and witnessed by Ms. Quinn, for a second time, as this generally occurred in her class.

155. Ms. Quinn, for a second time, did not dissuade the conduct, she did not report the harassment to the SSHS Administration, nor did she punish AM2.

156. The SSHS Administration conducted no investigation of the sexual harassment, nor did it properly respond to the sexual harassment, racial bigotry and discriminatory conduct of the student.

157. The SSHS Administration conducted no investigation of the sexual harassment and gender discrimination, nor did it properly respond to the sexual harassment

and discriminatory conduct of the student as required by state law.

158. The SSHS Administration conducted no investigation of the gender discrimination, nor did it properly respond to the harassment and discriminatory conduct of the student as required by school policy.

159. The SSHS Administration did not make a determination whether the reported discriminatory act was subject to the jurisdiction of the school district or another public agency, including law enforcement.

160. Under Montana law, M.C.A. § 45-5-220, a person commits the offense of stalking if the person purposely or knowingly engages in a course of conduct **directed at a specific person** and knows or should know that the course of conduct would cause a reasonable person to:

   (a) fear for the person's own safety or the safety of a third person; or
   (b) **suffer other substantial emotional distress**.

M.C.A. § 45-5-220 (emphasis added).

161. Under Montana law, M.C.A. § 45-5-220 (2), course of conduct is defined as two or more acts, including but not limited to acts in which the offender directly or indirectly, by any action, method, communication, or physical or electronic devices or means, follows, monitors, observes, surveils, threatens, harasses, or intimidates a person or interferes with a person's property. M.C.A. § 45-5-220.

162. The unwanted, second offense of sexual harassment by AM2 reported, for a second time, to Principal Kellen Palmer in the Fall of 2019, was prima facia

evidence of a crime having been committed on SSHS property by an SSHS student; the victim student was identified to Palmer; and, the suspect female student – AM2 – was identified to Palmer.

163. The SSHS Administration did not make a referral of the conduct, which is a violation of Montana law, M.C.A. § 20-5-209, BULLYING OF A STUDENT PROHIBITED, or M.C.A. § 45-5-220, STALKING, to the law enforcement agency with appropriate jurisdiction.

164. The SSHS Administration did not make prompt notification of the alleged victim and the alleged perpetrator, or the parents or guardian of AM2, now a repeat offender, if this student was a minor.

165. The SSHS Administration did not enact the District procedure, if such procedure exists, to protect the alleged victim of behavior prohibited under the BULLY-FREE MONTANA ACT from further incidents of such behavior, exacerbated in this instance by the fact that the offender was a repeat offender.

166. The SSHS Administration did not enforce the disciplinary procedure, if any such procedure exists, establishing the consequences for students found to have committed behavior prohibited under the BULLY-FREE MONTANA ACT.

167. The SSHS Administration did not follow the District procedure, if any such procedure exists, for the use of appropriate intervention and remediation for victims and perpetrators under the BULLY-FREE MONTANA ACT.

168. The incident of sexual harassment against Owen was not investigated by SSHS due to SSHS employee conduct and inaction; it was not investigated by MCPSD due to SSHS failing to properly supervise its teachers; and, neither SSHS nor MCPSD did any type of Title IX follow up or response to the known sexual harassment and sexual discrimination.

169. On November 7, 2019, Owen's car was again vandalized, for a second time, while parked on SSHS property, and then, for a second time, subjected to sexually harassing damage and sexually motivated conduct.

170. Owen's car was drenched in milk and soda, creating the debris base for the writing of the word "FAGGOT", again making a sexually harassing commentary against Owen.

171. This second incident of criminal vandalism and sexual harassment was reported to Principal Palmer by Deidre in an email dated on November 7, 2019 at 5:57 p.m..

172. The SSHS Administration conducted no investigation of the criminal act or the sexual harassment, nor did it properly respond to the criminal act, the racial bigotry and discriminatory conduct of the student(s) responsible.

173. The SSHS Administration conducted no investigation of the criminal act or discrimination, nor did it properly respond to the criminal act, racially motivated hate crime, harassment and discriminatory conduct of the student as

required by state law.

174. The SSHS Administration conducted no investigation of the criminal act or the sexually motivated and racially motivated discrimination, nor did it properly respond to the harassment and discriminatory conduct of the student(s) as required by school policy.

175. The SSHS Administration did not make a determination whether the reported discriminatory act was subject to the jurisdiction of the school district or another public agency, including law enforcement.

176. The SSHS Administration did not make a referral of the conduct, which is a violation of Montana law, M.C.A. § 20-5-209, BULLYING OF A STUDENT PROHIBITED, and M.C.A. § 45-6-101, CRIMINAL MISCHIEF, to the law enforcement agency with appropriate jurisdiction.

177. The SSHS Administration did not make prompt notification of the alleged victim and the alleged perpetrator, or the parents or guardian of the student or students, if the students were minors.

178. The SSHS Administration did not enact the District procedure, if such procedure exists, to protect the alleged victim of behavior prohibited under the BULLY-FREE MONTANA ACT from further incidents of such behavior, exacerbated in this instance by the fact that the offender was a repeat offender.

179. The SSHS Administration did not enforce the disciplinary procedure, if any such procedure exists, establishing the consequences for students found to have committed behavior prohibited under the BULLY-FREE MONTANA ACT.

180. The SSHS Administration did not follow the District procedure, if any such procedure exists, for the use of appropriate intervention and remediation for victims and perpetrators under the BULLY-FREE MONTANA ACT.

181. This second incident of sexual harassment and criminal vandalism was the natural consequence of the SSHS past pattern and practice of tolerating, accepting, and participating in past acts of harassment and discrimination; it demonstrated the foreseeable consequence of the SSHS Administration's past failure to investigate and respond to prior reports of sexual harassment, racial discrimination, and national origin discrimination by at least three SSHS employees and an identified cadre of over a dozen students and against Owen, while on school property, during school hours, and while participating in school sponsored activities.

182. The incident of sexual discrimination against Owen, and the second such event of criminal vandalism on school property, was not investigated by SSHS; it was not investigated by MCPSD; and, neither SSHS nor MCPSD did any type of Title IX follow up or response to the reported sexual harassment and discrimination.

183. On November 12, 2019, SSHS Student SJ was in a class on SSHS property with Owen when he took a SnapChat™ photo of Owen in class.

184. The photo was electronically sent to at least two other people, SSHS Student SM (15 years old)  and Owen (17 years old), with a technologically added drawing of a penis on Owen's image in a classroom at SSHS in a class being conducted by a SSHS teacher.

185. The manual insertion of the penis on the photograph by SSHS student SJ was placed and positioned in a manner so as to indicate or simulate the sexual conduct of oral penile penetration (a blow job) by Owen.



186. Under Montana law, M.C.A. § 45-5-625, a person commits the offense of sexual abuse of children if the person knowingly employs, uses, or permits the employment or use of a child in an exhibition of sexual conduct, actual or simulated (M.C.A. § 45-5-625(a)) or knowingly possesses any visual or print medium, including a medium by use of electronic communication in which a child is engaged in sexual conduct, actual or simulated (M.C.A. § 45-5-625 (e)).

187. As used in M.C.A. § 45-5-625, the following definitions apply:

   (a) "Electronic communication" means a sign, signal, writing, image, sound, data, or intelligence of any nature transmitted or created in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo-optical system.

   (b) "Sexual conduct" means:
      (i) actual or simulated:
         (A) sexual intercourse, whether between persons of the same or opposite sex;
         (B) penetration of the vagina or rectum by any object, except when done as part of a recognized medical procedure;
         (C) bestiality;
         (D) masturbation;
         (E) sadomasochistic abuse;
         (F) lewd exhibition of the genitals, breasts, pubic or rectal area, or other intimate parts of any person; or
         (G) defecation or urination for the purpose of the sexual stimulation of the viewer; or . . .

188. Under Montana law, M.C.A. § 45-8-201, a person commits the offense of obscenity when, with knowledge of the obscene nature of the material, the person purposely or knowingly:

   (a) sells, **delivers, or provides** or offers or agrees to sell, deliver, or provide any obscene writing, picture, record, or other representation or embodiment of the obscene to anyone under 18 years of age;
   (b) . . .
   (c) publishes, exhibits, or **otherwise makes available anything obscene to anyone under 18 years of age**;

M.C.A. § 45-8-201(emphasis added).

189. Under Montana law, M.C.A. § 45-8-201, a thing is obscene if:

(a)(i) it is a representation or description of perverted ultimate sexual acts, actual or simulated;
(ii) it is a patently offensive representation or description of normal ultimate sexual acts, actual or simulated; or
(iii) it is a patently offensive representation or description of masturbation, excretory functions, or lewd exhibition of the genitals; and

(b) taken as a whole the material:

   (i) applying contemporary community standards, appeals to the prurient interest in sex;
   (ii) portrays conduct described in subsection (2)(a)(i), (2)(a)(ii), or (2)(a)(iii) in a patently offensive way; and
   (iii) lacks serious literary, artistic, political, or scientific value.

M.C.A. § 45-8-201.

190. Under Montana law, M.C.A. § 45-8-213, a person commits the offense of violating privacy in communications if the person knowingly or purposely:

(a) with the purpose to terrify, **intimidate, threaten, harass, or injure**, communicates with a person by electronic communication and threatens to inflict injury or physical harm to the person or property of the person or **makes repeated use of obscene, lewd, or profane language or repeated lewd or lascivious suggestions**;
. . . , or

(d) with the purpose to terrify, intimidate, threaten, harass, or injure, publishes or distributes printed or electronic photographs, pictures, images, or films of an identifiable person without the consent of the person depicted that show:
   (i) the visible genitals, anus, buttocks, or female breast if the nipple is exposed; or
   (ii) **the person depicted engaged in a real or simulated sexual act**.

M.C.A. § 45-8-213(emphasis added).

191. The photographing incident (para. 185) was reported to Principal Palmer by

Deidre on or about February 15, 2020 by email.

192. The photographing incident reported to Principal Palmer on or about February 15, 2020 by email established prima facia evidence to Palmer that a crime(s) had occurred on SSHS property and Owen was the victim; the photographing incident reported to Principal Palmer on or about February 15, 2020 by email established prima facia evidence to Palmer that a crime(s) had occurred on SSHS property and SM was the victim; and the photographing incident reported to Principal Palmer on or about February 15, 2020 by email established prima facia evidence to Palmer that a crime(s) had occurred on SSHS property and SJ was the suspect.

193. The SSHS Administration conducted no investigation of the criminal act or the sexual harassment, nor did it properly respond to the criminal act, the racial bigotry and discriminatory conduct of the student(s) responsible.

194. No actions were taken against SJ for the act of sexual harassment against Owen; no Title IX investigation was conducted by SSHS; and, SSHS made no response to the reported sexual harassment by an identified SSHS Student SJ and against a SSHS Student Owen.

195. The SSHS Administration conducted no investigation of the criminal act or discrimination, nor did it properly respond to the criminal act, racially motivated hate crime, harassment and discriminatory conduct of the student as

required by state law.

196. The SSHS Administration conducted no investigation of the criminal act or the sexually motivated and racially motivated discrimination, nor did it properly respond to the harassment and discriminatory conduct of the student(s) as required by school policy.

197. The SSHS Administration did not make a determination whether the reported discriminatory act was subject to the jurisdiction of the school district or another public agency, including law enforcement.

198. The SSHS Administration did not make a referral of the conduct, which is a violation of Montana law, M.C.A. § 20-5-209, BULLYING OF A STUDENT PROHIBITED, or M.C.A. § 45-5-625, SEXUAL ABUSE OF CHILDREN M.C.A. 45-6-101, or M.C.A. § 45-8-201, OBSCENITY, OR M.C.A § 45-8-213, VIOLATING PRIVACY IN COMMUNICATIONS, to the law enforcement agency with appropriate jurisdiction.

199. The SSHS Administration did not make prompt notification of the alleged victim and the alleged perpetrator, or the parents or guardian of the student or students, if the students were minors.

200. The SSHS Administration did not enact the District procedure, if such procedure exists, to protect the alleged victim of behavior prohibited under the

BULLY-FREE MONTANA ACT from further incidents of such behavior, exacerbated in this instance by the fact that the offender was a repeat offender.

201. The SSHS Administration did not enforce the disciplinary procedure, if any such procedure exists, establishing the consequences for students found to have committed behavior prohibited under the BULLY-FREE MONTANA ACT.

202. The SSHS Administration did not follow the District procedure, if any such procedure exists, for the use of appropriate intervention and remediation for victims and perpetrators under the BULLY-FREE MONTANA ACT.

203. On December 27, 2019, the subject matter of the Occurrences identified in the preceding paragraphs were reported to MCPSD Director Julie Robitaille by Deidre by email.

204. MCPSD did not investigate the thirteen (13) individual prior incidents of reported sexual harassment, racial discrimination, national origin discrimination, cyberbullying, and criminal vandalism against Owen, despite the fact that:

    a.  Ten (10) of the reports identified the student suspect;
    b.  Student HC was identified as the suspect in five (5) of the incidents;
    c.  Student SJ was identified as the suspect in three (3) of the incidents;
    d.  Student AM2 was identified as the suspect two (2) of the incidents;
    e.  Student BH2 was identified as the suspect two (2) of the incidents;
    f.  Student TC was identified as the suspect two (2) of the incidents; and
    g.  Student AS was identified as the suspect two (2) of the incidents.

205. Under Montana law, M.C.A. § 45-5-220, a person commits the offense of

stalking if the person purposely or knowingly engages in a course of conduct **directed at a specific person** and knows or should know that the course of conduct would cause a reasonable person to:

    (a) fear for the person's own safety or the safety of a third person; or
    (b) **suffer other substantial emotional distress**.

M.C.A. § 45-5-220 (emphasis added).

206. MCPSD did not investigate the SSHS involvement in prior incidents of reported sexual harassment, racial discrimination, national origin discrimination, cyberbullying, and criminal vandalism against Owen, specifically in that at least three SSHS coaches and teachers engaged in discrimination or were witness to discrimination and took no action to report, investigate, or remediate against the conduct.

207. MCSD did not conduct any Title IX investigations, or any investigation conducted was done so negligently, in that the procedural and civil rights protections of Title IX were not undertaken nor observed by MCSD.

208. These numerous acts against Owen constitute severe, pervasive, and objectively offensive discriminatory conduct by students, and in at least three instances, a SSHS teacher, which violate Title IX and violate Owen's federal civil rights.

### The January 16, 2020 Incident

209. On January 16, 2020, Owen was accosted and attacked by 8th Grade Student CH while on SSHS property.

210. The January 16, 2020 incident involved aggressive conduct by CH toward Owen, which was either:

   (i)   fostered by SSHS,

   (ii)  implicitly permitted by SSHS given the prior history of racial discrimination tolerated by SSHS against Owen,

   (iii) implicitly permitted by SSHS given the prior history of national origin discrimination tolerated by SSHS against Owen,

   (iv) implicitly permitted by SSHS given the prior history of sexual harassment tolerated by SSHS against Owen, or

   (v)  implicitly permitted by SSHS given the prior history of teacher sexual harassment tolerated by SSHS and MCSD against Owen.

211. The January 16, 2020 attack on Owen, premised upon the continued and escalating nature of the past known and reported harassment of Owen by SSHS Students, teachers and coaches, was a foreseeable consequence of the SSHS Administration's past failure to investigate and respond to prior reports of sexual harassment, racial discrimination, and national origin discrimination by at least three SSHS employees and an identified cadre of over a dozen students and against Owen, while on school property, during school hours, and while participating in school sponsored activities.

212. The SSHS inaction was, as it turns out, a demonstrated approval of the continuing, and escalating, harassment of Owen, based on his race, which served to embolden CH – who is a known associate of the prior reported

offender HC, for the same type of racial discrimination in September 2018, and the SSHS inaction then, as well as now, served to encourage CH to engage in this attack and discriminatory conduct.

213. The racially and sexually motivated January 16, 2020 attack on Owen was committed by Student CH, who was a repeat offender of racial discrimination against Owen, see paragraph 184, *supra,* and it was known or knowable that CH was engaging in a pattern and practice of racial discrimination of Owen.

214. The racially and sexually motivated January 16, 2020 attack on Owen was known of and discovered by SSHS Coach Jared Crum on the date of the incident.

215. Coach Crum failed to properly investigate the incident, he failed to follow SSHS policy, and he engaged in racially motivated retaliatory conduct following the incident.

216. Following the January 16, 2020 racially and sexually motivated incident started by white students, with a history of past racial discrimination against this Afro-Caribbean student, the students involved were witnessed by Coach Crum making racial slurs against Owen.

217. Those students were gathered by Coach Crum, who then engaged in racially motivated retaliatory actions in creating a conspiratorial falsification of the facts of the January 16, 2020 incident by inducing the witnesses to provide false

statements.

218. Since the incident, four (4) of the ten (10) student witnesses have either recanted their prior statements entirely or stated that what happened did not have the criminal characteristics that Coach Crum pushed them to report initially.

219. The January 16, 2020 incident was initially investigated by Principal Palmer, with a finding of no wrongful conduct by Owen, specifically there was insufficient evidence of any act of sexual assault against CH.

220. The racially motivated assault by CH, however, was not properly investigated; the school violated its own policies; and, SSHS violated Owen's civil rights in the process.

221. The racially motivated conduct by Coach Crum was not properly investigated; the school violated its own policies; and, SSHS violated Owen's civil rights in the process.

222. At the conclusion of the Palmer investigation and report, Owen was given a three-day school suspension.

223. The suspension was not supported by the facts of the incident; it reflected a discriminatory and retaliatory motivation; and, the suspension decision did not address the mitigating factors of the racially motivated intent of the attacker, CH, nor the sexually harassing nature of the attack by CH.

## The January 30th, 2020 Suspension

224. At the conclusion of Owen's three-day suspension, SSHS/Palmer extended the suspension indefinitely.

225. As a result of Principal Palmer's decision, Owen was not allowed on School grounds for the remainder of the school year and he was unjustly deprived of the benefits of an education, the ability to participate in sports, and given the social stigma of being an "expelled" student.

226. The suspension violated Owen's civil rights; it was racially motivated; and, the actions taken by SSHS violated Owen's due process rights under Title IX and the required process protections established by *Goss v. Lopez,* 419 U.S. 565 (1975).

227. Due to the school administrators' wanton and reckless disregard of Owen's Constitutional Rights and the Title IX due process protections that were violated, such as the right to know the evidence used against him, failure to use exculpatory evidence, the right to cross-examine witnesses and/or the complainant, failing to state that Owen was presumed innocent of all the charges, the right to be free from retaliation, that was unreasonable in light of the circumstances, the School was negligent in the suspension action(s) taken.

228. Owen has suffered from severe emotional distress as a result of, including but not limited to, the following acts,:

(i)     the SSHS overt tolerance of harassment and discrimination running rampant in the school;

(ii)    the SSHS allowance of continued harassment of Owen based on his race;

(iii)   the SSHS allowance of continued harassment of Owen based on his color;

(iv)    the SSHS allowance of continued harassment of Owen based on his national origin;

(v)     the SSHS allowance of the continued sexual harassment of Owen based on his gender;

(vi)    the SSHS allowance of the constant violation of Owen's federal constitutional rights;

(vii)   the SSHS allowance of the constant violation of Owen's state constitutional rights;

(viii)  the SSHS allowance of students to commit criminal acts against Owen;

(ix)    the SSHS allowance of the disability discrimination against Owen in violation of the ADA; and

(x)     the SSHS disallowance of Owen's request for reasonable accommodation.

229. Owen's severe emotional distress was a foreseeable and predictable consequence because of the nature, prevalence, and sheer abhorrence of the racial bigotry thrust upon him by SSHS Students, eighteen (18) identified and others not, racial bigotry and harassment condoned and practiced by SSHS faculty, continued victimization by criminal conduct of SSHS Students, and

tolerance and purposeful ignorance of SSHS Administration, and MCPSD.

230. Owen's severe emotional distress is clearly established by the medical diagnoses of professional mental health care providers who have treated Owen:

a. Reported results of the school harassment: "Through no fault of his own, [Owen] has been hazed, ostracized, and shut out of these activities. This has taken its toll on his self-confidence, self-worth and self-identity. He struggles with sleep, is anxious and fearful much of the time, and is fighting for the normalcy that others his age take for granted…It is not mine to judge those responsible for Owen's abhorrent treatment, although accountability and repair would go a long way towards reinstating this fine young man's status in the high school sports community."

   *Phil Hamiton, LCSW January 12, 2021 Report*

b. Causation summary: "Nonetheless, a very significant number of physical and verbal incidents (e.g., name-calling, especially sexually vulgar, and racial slurs, and aggressive physical contact ("being grabbed", being smacked "enthusiastically", "ass-slapped", with a lot of force, repeatedly, by several team mates on a crowded team bus, or in the locker room. Apparently, this behavior is typically accepted in an athletic environment as team bonding and encouragement. But for O.M., this attention also included having his car vandalized, that is, painted with vulgar words and pictures on it during practice. It was reported that the football coach looked the other way, and inexplicably cut O.M. out of post season awards. There is more context, but I believe that it is impossible to NOT to see a serious and longstanding, escalating bullying problem."

   *Dr. Nadine Wisniewski Report dated August 14, 2020*

c. Diagnosis: "[a]n Adjustment Disorder with Mixed Anxiety and Depressed Mood indicates Owen developed emotional symptoms (anxiety and depression) in response to identifiable stressors (bullying, suspension, school charge for sexual assault).

These symptoms have caused significant impairment in social, academic and other important areas of functioning."

*Dr. Scolatti's June 20, 2020 Report*

231. The SSHS systematic tolerance of this student activity, and in three cases a teacher/coach, coupled with the SSHS administration's sustained negligence in (i) investigating, (ii) responding to, and (iii) preventing future harassing conduct demonstrates an additional injury in the violation of Owen's civil rights under M.C.A. § 49-1-102.

232. The deliberate indifference of SSHS Administration in violation of Title IX responsibilities and mandates, has also caused and/or significantly contributed to Owen's emotional distress and anxiety – recognized ADA disabilities.

233. The deliberate indifference of SSHS Administration in violation of A.R.M. 10.55.719: STUDENT PROTECTION PROCEDURES, the myriad of responsibilities and mandates under other statutes and regulations, as well as the common law, has also caused and/or significantly contributed to Owen's emotional distress and anxiety – recognized ADA disabilities.

234. MCPSD had been advised of at least nineteen (19) specific incidents of sexual harassment, racial discrimination, and/or national origin discrimination, and nineteen (19) separate incidents of either Title IX violations by SSHS Students, faculty and administration, and/or Title VI violations by SSHS Students, faculty and administration, and/or Section 504/ADA violations by SSHS Students,

faculty and administration, and at least seven (7) criminal acts perpetrated against Owen.

235. MCPSD was on notice of the issues involving the discrimination, harassment, criminal acts, and violation of civil rights by SSHS and against Owen.

236. MCPSD was negligent in response to the nineteen (19) reported incidents.

237. MCPSD was negligent in response to the apparent systemic discriminatory conduct of SSHS students.

238. MCPSD was negligent in the supervision of SSHS.

239. MCPSD was negligent in the performance if its Title IX obligations required by statute.

240. MCPSD has by action and/or inaction, MCSD violated Owen's federal civil rights.  MCSD has by action and/or inaction violated Owen's state guaranteed civil rights; and, MCSD has violated M.C.A. § 49-1-102 by engaging in discriminatory conduct.

241. MCPSD has caused Owen severe emotional distress; MCSD has caused Deidre severe emotional distress.

## Discrimination of Owen Mercado
## under the *Americans with Disabilities Act of 1990*

242. Owen suffers from at least two recognized ADA disabilities:

    a. Kim Heninger, LCPC diagnosed Owen with "Adjustment Disorder with Anxiety" on 11/16/2018; and

b.   On 10/31/2018 Owen was diagnosed with: current major depressive disorder…; anxiety.

243. SSHS was notified of Owen's disabilities on August 5, 2019 by Deidre when she informed Principal Palmer, in person, that Owen was disabled.

244. Deidre specifically told Principal Palmer that Owen suffered from anxiety and depression from the past harassing conduct at SSHS on August 5, 2019.

245. Deidre further requested the reasonable accommodation, specifically, in that SSHS eliminate, mitigate, or at least properly respond to the past harassment and discrimination and she asked for a dispute resolution process to be initiated that would result in a safe, discrimination free school environment for her son, Owen.

246. SSHS/Palmer failed to attempt to meet the request for reasonable accommodation; they did not investigate, remediate, or respond to the past discrimination and harassment activity perpetrated against Owen.

247. Prior to the request for reasonable accommodations, Owen had been the victim of seven (7) separate incidents of racial discrimination, national origin discrimination, and sexual harassment.

248. Prior to the request for reasonable accommodations, Owen and Deidre had reported multiple incidents to SSHS.

249. The reported incidents were not properly investigated by SSHS; the student perpetrators of the harassment were not investigated, punished, nor dissuaded

from future discriminatory and/or harassing activity.

250. The reported incidents of teacher involvement in the harassment and discrimination were not properly investigated by SSHS; the employee perpetrators of the harassment and actors in discriminatory actions were not investigated, punished, nor dissuaded from future discriminatory and/or harassing activity.

251. The reported criminal incidents were not properly investigated by SSHS; the student perpetrators of the harassment were not investigated, punished, nor dissuaded from future discriminatory and/or harassing activity, and SSHS did not follow its regulatory obligation of reporting criminal activity to law enforcement.

252. On August 5, 2019 the request for SSHS to provide a safe school for Owen was made based on the systemic past pattern of discriminatory and harassing conduct and the likelihood for future harassment and discrimination; Not surprisingly, and in prophetic fashion, on August 12, 2019 the next act of vandalism and harassment and discrimination occurred on SSHS school property as was reasonably predictable given the innumerable of reports made by Owen and Deidre.

253. SSHS/Palmer did not react to the incidents of verbal bigotry, harassment and discrimination in the past, and those reasonably predictable based on the

reporting and knowledge of SSHS.  Exactly one week after being forewarned of the risks, premised on the known systemic nature of the discriminatory conduct – to which he refused and/or failed to react – yet another criminal act of vandalism was perpetrated upon Owen while on school property.

254. Since the request for reasonable accommodation was made, an additional eight (8) incidents of discrimination and harassment occurred, many by the same repeat offenders as reported  and identified to Palmer before the request for reasonable accommodation.

255. Furthermore, SSHS/Palmer failed to initiate any Free Appropriate Public Education ("FAPE")[2] program protections for Owen under the requirements of 34 CFR § 300.101.

256. Because SSHS was informed of the diagnoses of Owen as a disabled person, that is he is regarded as having an impairment (Depression and Anxiety), which the school *knew* about as of August 5, 2019, that triggered SSHS' duty to provide such things like an individualized education plan, evaluation and testing, counseling, progress monitoring, and retention & social promotion under Title IX and related education regulations, such as 34 CFR § 300.101.

257. The cause of Owen's emotional distress was known and reported to SSHS.

---

[2] FAPE is Free Appropriate Public Education for disabled students, which was an amendment to the Individuals with Disabilities Education Act ("IDEA"). Section 504 of the Rehabilitation Act of 1973.

258. The result of the discrimination and harassment were the triggers for the emotional disorder symptoms (anxiety and depression).

259. Owen's medical diagnosis stated that his disabilities were in response to identifiable stressors (bullying, suspension, school charge for sexual assault) of which SSHS was aware, and responsible for indirectly in the failure to supervise students, but directly in the active harassment and discrimination by teachers/coaches.

260. The SSHS and/or MCPSD reaction to these reported incidents, or the lack thereof, was negligent and Defendants breached their duties to Owen and Deidre, while also causing severe emotional distress by their actions and/or inaction.

261. The additional incidents after the request for reasonable accommodations, coupled with the already permitted harm from prior incidents resulted in an aggravation of the emotional distress and disabilities suffered by Owen:

   a. On March 12, 2020, Dr. Nadine M. Wisniewski opined that Owen's depression arose directly from the events at SSHS, including the school's failure to provide for a safe school environment free from discrimination and/or harassment.

   b. On June 13, 2020, Owen's diagnoses were confirmed by Dr. Michael Scolatti, who diagnosed Owen with: "309.28 (F43.23) Adjustment Disorder with Mixed Anxiety and Depressed Mood", and all arising from the activities at SSHS.

262. On November 10, 2019, Deidre made a second plea for reasonable

accommodation from Principal Palmer that:

    a.  sought rectification of the ongoing harassment tolerated by the school, and

    b.  sought treatment for Owen's depression and severe anxiety.

263. SSHS (Principal Palmer) and MCPSD (Julie Robitaille) ignored Deidre's requests for reasonable accommodations for Owen's reported disabilities and the multiple incidents of harassment, discrimination, and failing to meet the educational needs of a disabled student.

264. SSHS failed by, including but not limited to, not providing an Individualized Education Plan ("IEP") to accommodate Owen's disabilities, which by statute should have been discussed with the parent and utilized by the school.

265. Principal Palmer and Ms. Robitaille offered no response to nor explanation why the School (SSHS and Palmer) and the District (Robitaille) allowed the ongoing harassment and discrimination, which is the genesis of Owen's severe anxiety and depression and Deidre's severe emotional distress.

266. SSHS had been on notice from at least October 2018 that Owen suffered from depression and Deidre routinely informed Kellen Palmer of Owen's increasingly severe depression symptoms premised on the continued harassment and discrimination occurring at SSHS by SSHS students while on SSHS grounds during school hours.

267. Because if its knowledge, and premised at least in part on statutory obligations, SSHS was under a duty to initiate IDEA/FAPE response techniques to mitigate the harm to Owen's appropriate education where he would not continue to be harassed, but the school failed to do so.

268. SSHS and MCSD have violated the ADA, IDEA, FAPE, and Section 504 of the Rehabilitation Act of 1973 and infringed Owen's civil rights that provide he be able to enjoy a discrimination free school environment.

269. On February 10, 2020 Deidre made a third formal request for reasonable accommodation for Owen from Principal Palmer that (i) sought rectification of the ongoing harassment tolerated by the school, (ii) an appropriate institutional response to Owen's depression and severe anxiety in its educational plan, and (iii) treatment for Owen's depression and severe anxiety caused by SSHS.

270. SSHS (Principal Palmer) and MCSD (Julie Robitaille) responded that (i) the Seely Swan school is too small to offer services for Owen and his depression (in violation of FAPE since SSHS is a recipient of federal funds), but (ii) offered no response nor explanation for the ongoing harassment which is the genesis of the depression and other disabilities.

271. The SSHS response to this, the third, request for reasonable accommodation and Title IX treatment, was to send Owen to the Willard School and The Learning Lab on or around February 20, 2020, which is not a reasonable

accommodation under 20 U.S.C. § 1412(5).

272. SSHS and MCPSD failed to provide the proper response, according to IDEA guidance, which is to make every effort to help a disabled child by keeping the disabled child in a regular classroom due to the recognized humiliation factor involved with this referral. Likewise, it was detrimental to Owen to refer him to the Learning Lab and Willard School when that institution is not the accommodation that was needed nor requested; the referral was, in fact, retaliatory.

273. SSHS and MCPSD violated 20 U.S.C. § 1415(b)(1)(C) by not notifying Deidre of the intended move of Owen to the Willard School.

274. 20 U.S.C. § 1415(b)(1)(C) requires that parents must receive prior written notice when a school proposes or refuses to alter a placement of the student, which said notice Deidre did not receive.

275. SSHS violated Section 504/IDEA/ADA, in that it provided no response to the ongoing harassment and no explanation as to why the requested reasonable accommodation – stopping the harassment and/or discrimination – was not feasible.

276. SSHS violated the ADA, in that it provided no response to the ongoing harassment and no explanation as to why the requested reasonable accommodation – stopping the harassment and/or discrimination – was not

feasible.

277. SSHS violated Section 504/IDEA/ADA by sending Owen to a facility for disabled and troubled children without an IEP.

278. The improvident SSHS referral of Owen to the Willard School, without an IEP, demonstrates, among other things, the discriminatory motivation of the referral, the negligence by SSHS in dealing with the ongoing racial discrimination and sexual harassment at SSHS, and the "knee jerk" reaction SSHS had to this entire situation.

279. MCPSD (Julie Robitaille) and SSHS (Principal Palmer) sent Owen to the "Learning Lab" with no explanation why he could not stay at SSHS; with no rational basis as to how this transfer would diminish the pervasive harassing and discriminatory environment at SSHS; or, with no basis in medical knowledge as to how this transfer would serve to mitigate the emotional distress and severe anxiety disability Owen already suffered from due to the SSHS harassment and discrimination.

280. Deidre was given no opportunity to participate in this decision about her disabled son's education, which violates IDEA.

281. The SSHS and MCPSD decision was not a joint school-parental action plan, which violates IDEA.

282. Deidre was not given the chance to appeal the school's unilateral decision of

sending Owen to the "Learning Lab", which violates IDEA.

283. MCPSD (Julie Robitaille), without consultation from the parent, arranged for a one-on-one tutor for Owen where he was kept out of the general population at SSHS, which is an additional violation of IDEA that requires that a parent must know the plan for their child at school.

284. SSHS and MCSD have discriminated against Owen in the terms and conditions of his educational experience based on his mental disability, which is recognized as and declared to be a protected civil right under M.C.A. § 49-1-102.

### The persistent, severe, and/or repeated and permitted harassment and discrimination at SSHS is so out of control that it has been "*industrialized*"

285. The severe emotional distress was a foreseeable and predictable consequence of the nature, prevalence, and sheer abhorrence of the racial bigotry Owen suffered at the hands of SSHS and MCPSD.

286. SSHS and MCPSD displayed a severe degree of malfeasance and misfeasance in the handling of past reported incidents of discrimination and harassment at SSHS to such a degree that (i) it was pervasive and seen as approved conduct by Students, (ii) it was practiced and participated in by teachers and coaches, and (iii) it became industrialized on the Internet.

287. In December 2020, a meme was posted to an Instagram™ account

"13c_meme_page" ("13C Meme page").



Reference to the MHSA

266 people use this site

Reference to SSHS Athletic Conference Designation

288. 13C Meme page specifically mentions Owen and depicts the fact that the individual that created the meme wishes to keep Owen out of the SSHS school.



13c Meme Page: a dedicated web site for posting about SSHS students and premised on its athletic designation as a Class C school.

Seely Swan High School: the inserted addition of personalized language to the Internet photo similar to the photo in ¶ 93, *supra*.

13c Meme Page: The level of distribution (80 different people) on this site as of December 9, 2020.

Owen Mercado the inserted addition of personalized language to the Internet photo similar to the photo in ¶ 93, *supra*.

289. According to Instagram™ account information, the post was created by BH, who is a student at SSHS.

290. BH created the post, presumably with the additional text inserted onto the photo/meme, and submitted the meme post to 13C Meme page via direct messaging ("DM") technology.

291. The account owner of 13c_meme_page published the BH post on the 13c_meme_page account.

292. Once posted by the 13c_meme_page account owner, the Instagram™

technology then permits other 13c_meme_page account users to "like" the BH post, which is understood to be in Internet parlance an "agreement" with the harassing nature of the meme.

293. What this demonstrates is that the harassment and ridicule of students at SSHS has become so accepted and tolerated by the SSHS Administration that it – the practice of harassing students – has gotten its own web site to facilitate the SSHS practice.

294. The harm created by the existence of this web site, dedicated to the SSHS adopted practice of tolerating student-on-student harassment, is exacerbated by the fact that, upon information and belief, the site is known to and used by SSHS personnel for the same purpose of harassment – harassment of students by a SSHS employee(s).

295. The above derogatory post of an Internet photograph (a "meme"), altered by electronic means to be personalized against Owen and further altered to premise the harassment directly related to Seely Swan High School, was seen by and then liked by another Instagram [TM] account "lady.blackhawks":



296. The level of distribution of this site includes the 266 followers who can view the post, the 116 followers of the post, and the 80 different people on this site who viewed the post and "clicked" on it as a "like" as of December 9, 2020.

297. Upon information and belief, the "lady.blackhawks" account is controlled by an employee of SSHS.



The employee site and the 13C Meme page are both used by SSHS students, and there is a commonality of the user "ryland692" on both pages.

The 13C Meme page has predominantly posted images of SSHS athletes on the derogatory page; the SSHS employee is an athletic coach at SSHS.

298. Upon information and belief, "lady.blackhawks" is sanctioned by SSHS as the account for the Lady Blackhawks athletics.

299. Upon information and belief, SSHS by and through this employee has actively engaged in on-line harassment of a student, Owen, as well as possible others.

300. The continued and unexplained failure to investigate the incidents of discrimination and harassment, despite each and every act being premised on the protected class status of Owen, created such a pervasive and permissive environment of accepted discrimination and harassment that the SSHS educational institution aided, abetted, compelled, or coerced the Students, and in at least three cases the employees of SSHS, to commit an act forbidden under M.C.A. Chapter 49, *et seq.*, including but not limited to:

   a. M.C.A. § 49-1-101: every person has the right of protection from personal insult, defamation, and injury to the person's personal relations;

   b. M.C.A. § 49-1-102: The right to be free from discrimination because of race, creed, color, sex, physical or mental disability, age, or national origin is recognized as and declared to be a civil right in Montana;

   c. M.C.A. § 49-2-301: It is unlawful discriminatory practice for an educational institution to discriminate against a person because that person has opposed any practices forbidden under Chapter 49 because the individual has filed a complaint or participated in any manner in any investigation or proceeding involving discrimination.

   d. M.C.A. § 49-2-307: It is an unlawful discriminatory practice for an educational institution to exclude, expel, limit, or otherwise

discriminate against a person enrolled as a student in the terms, conditions or privileges of the institution because of race, creed, color, national origin, or disability.

301. The continued and permitted discrimination and harassment at the SSHS educational institution, by Students, eighteen (18) identified to SSHS and others unknown, and by at least three SSHS employed, was so expansive and endured so long that it is by definition persistent, severe and repeated, such that the conduct, and inaction of SSHS violated the BULLY-FREE MONTANA ACT.

302. The continued and permitted discrimination and harassment at the SSHS educational institution, by Students, eighteen (18) identified to SSHS and others unknown, and by at least three SSHS employed, was so expansive and endured so long that it is by definition persistent, severe and repeated, such that the conduct, and inaction of SSHS that it aided, abetted, compelled, or coerced the Students, and in at least three cases the employees of SSHS, to commit acts of overt, offensive, and disgusting discrimination and harassment that facially required reporting to law enforcement for the investigation of potential criminal acts, including but not limited to:

    a. M.C.A. § 45-8-201: Obscenity;

    b. M.C.A. § 45-6-101: Criminal mischief;

    c. M.C.A. § 45-8-213:  Privacy in communications;

    d. M.C.A. § 45-5-221: Malicious intimidation or harassment relating to civil or human rights;

e.  M.C.A. § 45-5-625: Sexual abuse of Children.

f.  M.C.A. § 45-5-220: Stalking;

g.  M.C.A. § 49-2-302: Aiding, coercing, or attempting; and

h.  M.C.A. § 45-5-222:   Sentence enhancement – offense committed because of victim's race, creed, religion, color, national origin, or involvement in civil rights or human rights activities.

303. Each and every one of the crimes ignored by SSHS, committed against Owen, and perpetrated by known and reported SSHS Students, was also subject to sentence enhancement under the "Hate Crimes" enhancing statute M.C.A. § 45-5-222, which generally provides for an additional sentence for acts committed because of the victim's race, creed, religion, color, or national origin.

## V.
## Claims and Causes of Action

### COUNT 1
#### NEGLIGENCE :
#### SEELY SWAN HIGH SCHOOL AND MISSOULA COUNTY PUBLIC SCHOOL DISTRICT: BREACH IN FAILING TO PROVIDE AN EDUCATIONAL INSTITUTION FREE FROM RACIAL DISCRIMINATION AND AN EDUCATIONAL OPPORTUNITY FREE FROM RACIAL DISCRIMINATION

304. Plaintiff herein realleges paragraphs 1 through 303 above as though fully set forth herein.

305. SSHS and MCPSD owed a duty to Owen to provide a safe, discrimination free, place of schooling and a discrimination free education.

306. SSHS and MCPSD were made aware the continued harassment and

discrimination that was being directed towards Owen based on the protected class status race.

307. SSHS, after knowing about harassment and discrimination, failed to respond to the known and reported acts of racial bigotry, discrimination and harassment; MCPSD, after knowing about harassment and discrimination, failed to respond to the known and reported acts of racial bigotry, discrimination and harassment.

308. Neither SSHS nor MCPSD responded to the racial discrimination in accord with state law, federal law, and District policy.

309. The SSHS Administration and/or the MCPSD conducted no investigation of the racial discrimination, nor did they, jointly and severally, or individually, properly respond to the racially motivated harassment and discriminatory conduct of the students.

310. The SSHS Administration and/or MCPSD conducted no investigation of the racially motivated harassment, nor did they properly respond to the harassment and discriminatory conduct of the students and/or teachers as required by state law.

311. The SSHS Administration and/or MCPSD conducted no investigation of the racially motivated harassment, nor did it properly respond to the harassment and discriminatory conduct of the students as required by school policy.

312. The SSHS Administration and/or MCPSD did not make a determination

whether the reported discriminatory act was subject to the jurisdiction of the school district or another public agency, including law enforcement.

313. The SSHS Administration and/or MCPSD did not make a referral of the racial discrimination conduct, which is a potential violation of Montana law, M.C.A. § 20-5-209, BULLYING OF A STUDENT PROHIBITED,  or M.C.A. § 45-5-220, STALKING, or M.C.A. § 45-8-201: OBSCENITY; or M.C.A. § 45-6-101: CRIMINAL MISCHIEF; or M.C.A. § 45-8-213:  PRIVACY IN COMMUNICATIONS; or M.C.A. § 45-5-221: MALICIOUS INTIMIDATION OR HARASSMENT RELATING TO CIVIL OR HUMAN RIGHTS; or M.C.A. § 45-5-625: SEXUAL ABUSE OF CHILDREN; or M.C.A. § 49-2-302: AIDING, COERCING, OR ATTEMPTING, to the law enforcement agency with appropriate jurisdiction.

314. The SSHS Administration and/or MCPSD did not make prompt notification of the alleged victim and the alleged perpetrator, or the parents or guardian of the SSHS Students, if these students were minors.

315. The SSHS Administration and/or MCPSD did not enact the District procedure, if such procedure exists, to protect the alleged victim of behavior prohibited under the BULLY-FREE MONTANA ACT from further incidents of such behavior.

316. The SSHS Administration and/or MCPSD did not enforce the disciplinary procedure, if any such procedure exists, establishing the consequences for

students found to have committed behavior prohibited under the BULLY-FREE MONTANA ACT.

317. The SSHS Administration and/or MCPSD did not follow the District procedure, if any such procedure exists, for the use of appropriate intervention and remediation for victims and perpetrators under the BULLY-FREE MONTANA ACT.

318. The continued and escalating nature of the harassment was a foreseeable consequence of the SSHS Administration's and MCPSD's past failure to investigate and respond to prior reports of sexual harassment, racial discrimination, and national origin discrimination by at least three SSHS employees and an identified cadre of over a dozen students and against Owen, while on school property, during school hours, and while participating in school sponsored activities.

319. The incidents of racial discrimination against Owen were not investigated by Principal Palmer; they were not investigated by MCPSD; and, neither SSHS nor MCPSD did any type of Title IX follow up or response to the reported racial discrimination, despite the fact that the harassment was persistent, severe, and/or repeated.

320. Owen was damaged emotionally and physically by losing years of his educational life and capability to participate in athletics, his mental stability, and his overall wellbeing to this unprovoked attack on who he is as a person; Deidre was

damaged emotionally and physically by the extreme and outrageous conduct of SSHS, SSHS Students, SSHS faculty, and MCPSD.

321. Plaintiffs have sustained actual damages in an amount as yet not fully realized in medical costs and treatment costs, but the total damages substantially exceed the jurisdictional limits of this court.

**COUNT 2**

NEGLIGENCE:
SEELY SWAN HIGH SCHOOL  AND MISSOULA COUNTY PUBLIC SCHOOL DISTRICT:
BREACH IN FAILING TO PROVIDE AN EDUCATIONAL INSTITUTION FREE FROM RACIAL
DISCRIMINATION AND AN EDUCATIONAL OPPORTUNITY FREE FROM
DISCRIMINATION BASED ON COLOR

322. Plaintiff herein realleges paragraphs 1 through 321 above as though fully set forth herein.

323. SSHS and MCPSD owed a duty to Owen to provide a safe, discrimination free, place of schooling and a discrimination free education.

324. SSHS and MCPSD were made aware the continued harassment and discrimination that was being directed towards Owen based on the protected class status of color.

325. SSHS, after knowing about harassment and discrimination, failed to respond to the known and reported acts of racial bigotry, discrimination and harassment; MCPSD, after knowing about harassment and discrimination, failed to respond to the known and reported acts of racial bigotry, discrimination and harassment based on Owens' skin color.

326. Neither SSHS nor MCPSD responded to the racial/skin color discrimination in accord with state law, federal law, and District policy.

327. The SSHS Administration and/or the MCPSD conducted no investigation of the racial/skin color discrimination, nor did they, jointly and severally, or individually, properly respond to the racially motivated harassment and discriminatory conduct of the students.

328. The SSHS Administration and/or MCPSD conducted no investigation of the racially motivated harassment, nor did they properly respond to the harassment and discriminatory conduct of the students and/or teachers as required by state law.

329. The SSHS Administration and/or MCPSD conducted no investigation of the racially motivated harassment, nor did it properly respond to the harassment and discriminatory conduct of the students as required by school policy.

330. The SSHS Administration and/or MCPSD did not make a determination whether the reported discriminatory act was subject to the jurisdiction of the school district or another public agency, including law enforcement.

331. The SSHS Administration and/or MCPSD did not make a referral of the racial/skin color discrimination conduct, which is a potential violation of Montana law, M.C.A. § 20-5-209, BULLYING OF A STUDENT PROHIBITED,  or M.C.A. § 45-5-220, STALKING, or M.C.A. § 45-8-201: OBSCENITY; or M.C.A.

§ 45-6-101: CRIMINAL MISCHIEF; or M.C.A. § 45-8-213: PRIVACY IN COMMUNICATIONS; or M.C.A. § 45-5-221: MALICIOUS INTIMIDATION OR HARASSMENT RELATING TO CIVIL OR HUMAN RIGHTS; or M.C.A. § 45-5-625: SEXUAL ABUSE OF CHILDREN; or M.C.A. § 49-2-302: AIDING, COERCING, OR ATTEMPTING, to the law enforcement agency with appropriate jurisdiction.

332. The SSHS Administration and/or MCPSD did not make prompt notification of the alleged victim and the alleged perpetrator, or the parents or guardian of the SSHS Students, if these students were minors.

333. The SSHS Administration and/or MCPSD did not enact the District procedure, if such procedure exists, to protect the alleged victim of behavior prohibited under the BULLY-FREE MONTANA ACT from further incidents of such behavior.

334. The SSHS Administration and/or MCPSD did not enforce the disciplinary procedure, if any such procedure exists, establishing the consequences for students found to have committed behavior prohibited under the BULLY-FREE MONTANA ACT.

335. The SSHS Administration and/or MCPSD did not follow the District procedure, if any such procedure exists, for the use of appropriate intervention and remediation for victims and perpetrators under the BULLY-FREE MONTANA ACT.

336. The continued and escalating nature of the harassment was a foreseeable consequence of the SSHS Administration's and MCPSD's past failure to

investigate and respond to prior reports of sexual harassment, racial discrimination, and national origin discrimination by at least three SSHS employees and an identified cadre of over a dozen students and against Owen, while on school property, during school hours, and while participating in school sponsored activities.

337. The incidents of racial discrimination against Owen were not investigated by Principal Palmer; they were not investigated by MCPSD; and, neither SSHS nor MCPSD did any type of Title IX follow up or response to the reported racial discrimination, despite the fact that the harassment was persistent, severe, and/or repeated.

338. Owen was damaged emotionally and physically by losing years of his educational life and capability to participate in athletics, his mental stability, and his overall wellbeing to this unprovoked attack on who he is as a person; Deidre was damaged emotionally and physically by the extreme and outrageous conduct of SSHS, SSHS Students, SSHS faculty, and MCPSD.

339. Plaintiffs have sustained actual damages in an amount as yet not fully realized in medical costs and treatment costs, but the total damages substantially exceed the jurisdictional limits of this court.

## COUNT 3
### NEGLIGENCE:
### SEELY SWAN HIGH SCHOOL AND MISSOULA COUNTY PUBLIC SCHOOL DISTRICT: BREACH IN FAILING TO PROVIDE AN EDUCATIONAL INSTITUTION FREE FROM RACIAL DISCRIMINATION AND AN EDUCATIONAL OPPORTUNITY FREE FROM DISCRIMINATION BASED ON NATIONAL ORIGIN

340. Plaintiff herein realleges paragraphs 1 through 339 above as though fully set forth herein.

341. SSHS and MCPSD owed a duty to Owen to provide a safe, discrimination free, place of schooling and a discrimination free education.

342. SSHS and MCPSD were made aware the continued harassment and discrimination that was being directed towards Owen based on the protected class status of national origin.

343. SSHS, after knowing about harassment and discrimination, failed to respond to the known and reported acts of racial bigotry, discrimination and harassment; MCPSD, after knowing about harassment and discrimination, failed to respond to the known and reported acts of racial bigotry, discrimination and harassment based on Owens' national origin.

344. Neither SSHS nor MCPSD responded to the racial/national origin discrimination in accord with state law, federal law, and District policy.

345. The SSHS Administration and/or the MCPSD conducted no investigation of the racial/national origin discrimination, nor did they, jointly and severally, or individually, properly respond to the racially motivated harassment and

discriminatory conduct of the students.

346. The SSHS Administration and/or MCPSD conducted no investigation of the racially motivated harassment, nor did they properly respond to the harassment and discriminatory conduct of the students and/or teachers as required by state law.

347. The SSHS Administration and/or MCPSD conducted no investigation of the racially motivated harassment, nor did it properly respond to the harassment and discriminatory conduct of the students as required by school policy.

348. The SSHS Administration and/or MCPSD did not make a determination whether the reported discriminatory act was subject to the jurisdiction of the school district or another public agency, including law enforcement.

349. The SSHS Administration and/or MCPSD did not make a referral of the racial/national origin discrimination conduct, which is a potential violation of Montana law, M.C.A. § 20-5-209, BULLYING OF A STUDENT PROHIBITED, or M.C.A. § 45-5-220, STALKING, or M.C.A. § 45-8-201: OBSCENITY; or M.C.A. § 45-6-101: CRIMINAL MISCHIEF; or M.C.A. § 45-8-213: PRIVACY IN COMMUNICATIONS; or M.C.A. § 45-5-221: MALICIOUS INTIMIDATION OR HARASSMENT RELATING TO CIVIL OR HUMAN RIGHTS; or M.C.A. § 45-5-625: SEXUAL ABUSE OF CHILDREN; or M.C.A. § 49-2-302: AIDING, COERCING, OR ATTEMPTING, to the law enforcement agency with appropriate jurisdiction.

350. The SSHS Administration and/or MCPSD did not make prompt notification of the alleged victim and the alleged perpetrator, or the parents or guardian of the SSHS Students, if these students were minors.

351. The SSHS Administration and/or MCPSD did not enact the District procedure, if such procedure exists, to protect the alleged victim of behavior prohibited under the BULLY-FREE MONTANA ACT from further incidents of such behavior.

352. The SSHS Administration and/or MCPSD did not enforce the disciplinary procedure, if any such procedure exists, establishing the consequences for students found to have committed behavior prohibited under the BULLY-FREE MONTANA ACT.

353. The SSHS Administration and/or MCPSD did not follow the District procedure, if any such procedure exists, for the use of appropriate intervention and remediation for victims and perpetrators under the BULLY-FREE MONTANA ACT.

354. The continued and escalating nature of the harassment was a foreseeable consequence of the SSHS Administration's and MCPSD's past failure to investigate and respond to prior reports of sexual harassment, racial discrimination, and national origin discrimination by at least three SSHS employees and an identified cadre of over a dozen students and against Owen, while on school property, during school hours, and while participating in school sponsored activities.

355. The incidents of racial discrimination against Owen were not investigated by Principal Palmer; they were not investigated by MCPSD; and, neither SSHS nor MCPSD did any type of Title IX follow up or response to the reported racial discrimination, despite the fact that the harassment was persistent, severe, and/or repeated.

356. Owen was damaged emotionally and physically by losing years of his educational life and capability to participate in athletics, his mental stability, and his overall wellbeing to this unprovoked attack on who he is as a person; Deidre was damaged emotionally and physically by the extreme and outrageous conduct of SSHS, SSHS Students, SSHS faculty, and MCPSD.

357. Plaintiffs have sustained actual damages in an amount as yet not fully realized in medical costs and treatment costs, but the total damages substantially exceed the jurisdictional limits of this court.

### COUNT 4
NEGLIGENCE:
SEELY SWAN HIGH SCHOOL AND MISSOULA COUNTY PUBLIC SCHOOL DISTRICT: BREACH IN FAILING TO PROVIDE AN EDUCATIONAL INSTITUTION FREE FROM RACIAL DISCRIMINATION AND AN EDUCATIONAL OPPORTUNITY FREE FROM DISCRIMINATION BASED ON GENDER

358. Plaintiff herein realleges paragraphs 1 through 357 above as though fully set forth herein.

359. SSHS and MCPSD owed a duty to Owen to provide a safe, discrimination free, place of schooling and a discrimination free education.

360. SSHS and MCPSD were made aware the continued harassment and discrimination that was being directed towards Owen based on the protected class status of gender.

361. SSHS, after knowing about sexual harassment and discrimination, failed to respond to the known and reported acts of racial bigotry, gender discrimination and sexual harassment; MCPSD, after knowing about sexual harassment and gender discrimination, failed to respond to the known and reported acts of racial bigotry, gender discrimination and sexual harassment based on Owens' gender.

362. Neither SSHS nor MCPSD responded to the gender discrimination in accord with state law, federal law, and District policy.

363. The SSHS Administration and/or the MCPSD conducted no investigation of the gender discrimination, nor did they, jointly and severally, or individually, properly respond to the gender motivated sexual harassment and discriminatory conduct of the students.

364. The SSHS Administration and/or MCPSD conducted no investigation of the gender motivated sexual harassment, nor did they properly respond to the sexual harassment and discriminatory conduct of the students and/or teachers as required by state law.

365. The SSHS Administration and/or MCPSD conducted no investigation of the gender motivated sexual harassment, nor did it properly respond to the sexual

harassment and discriminatory conduct of the students as required by school policy.

366. The SSHS Administration and/or MCPSD did not make a determination whether the reported discriminatory act was subject to the jurisdiction of the school district or another public agency, including law enforcement.

367. The SSHS Administration and/or MCPSD did not make a referral of the gender discrimination conduct, which is a potential violation of Montana law, M.C.A. § 20-5-209, BULLYING OF A STUDENT PROHIBITED, or M.C.A. § 45-5-220, STALKING, or M.C.A. § 45-8-201: OBSCENITY; or M.C.A. § 45-6-101: CRIMINAL MISCHIEF; or M.C.A. § 45-8-213: PRIVACY IN COMMUNICATIONS; or M.C.A. § 45-5-221: MALICIOUS INTIMIDATION OR HARASSMENT RELATING TO CIVIL OR HUMAN RIGHTS; or M.C.A. § 45-5-625: SEXUAL ABUSE OF CHILDREN; or M.C.A. § 49-2-302: AIDING, COERCING, OR ATTEMPTING, to the law enforcement agency with appropriate jurisdiction.

368. The SSHS Administration and/or MCPSD did not make prompt notification of the alleged victim and the alleged perpetrator, or the parents or guardian of the SSHS Students, if these students were minors.

369. The SSHS Administration and/or MCPSD did not enact the District procedure, if such procedure exists, to protect the alleged victim of behavior prohibited under the BULLY-FREE MONTANA ACT from further incidents of such behavior.

370. The SSHS Administration and/or MCPSD did not enforce the disciplinary procedure, if any such procedure exists, establishing the consequences for students found to have committed behavior prohibited under the BULLY-FREE MONTANA ACT.

371. The SSHS Administration and/or MCPSD did not follow the District procedure, if any such procedure exists, for the use of appropriate intervention and remediation for victims and perpetrators under the BULLY-FREE MONTANA ACT.

372. The continued and escalating nature of the harassment was a foreseeable consequence of the SSHS Administration's and MCPSD's past failure to investigate and respond to prior reports of sexual harassment, racial discrimination, and national origin discrimination by at least three SSHS employees and an identified cadre of over a dozen students and against Owen, while on school property, during school hours, and while participating in school sponsored activities.

373. The incidents of racial discrimination against Owen were not investigated by Principal Palmer; they were not investigated by MCPSD; and, neither SSHS nor MCPSD did any type of Title VI follow up or response to the reported racial discrimination, despite the fact that the harassment was persistent, severe, and/or repeated.

374. Owen was damaged emotionally and physically by losing years of his educational

life and capability to participate in athletics, his mental stability, and his overall wellbeing to this unprovoked attack on who he is as a person; Deidre was damaged emotionally and physically by the extreme and outrageous conduct of SSHS, SSHS Students, SSHS faculty, and MCPSD.

375. Plaintiffs have sustained actual damages in an amount as yet not fully realized in medical costs and treatment costs, but the total damages substantially exceed the jurisdictional limits of this court.

### COUNT 5
NEGLIGENCE:
SEELY SWAN HIGH SCHOOL AND MISSOULA COUNTY PUBLIC SCHOOL DISTRICT
IN FAILING TO SUPERVISE STUDENTS

376. Plaintiff herein realleges paragraphs 1 through 375 above as though fully set forth herein.

377. SSHS and MCPSD had a duty to supervise students and act as a reasonable and prudent educational institution in addressing, among other things, bulling behavior in schools, on school buses, at school-sponsored activities, and online.

378. SSHS and MCPSD had a duty to adopt policies to deter persistent threatening, insulting, or demeaning gestures or physical conduct, including an intentional written, verbal, or electronic communication or threat directed against a student or students regardless of the under reason for such conduct.

379. SSHS and MCPSD had a duty to supervise students and act as a reasonable and prudent educational institution in addressing, among other things, criminal

conduct of students in schools, on school buses, at school-sponsored activities, and online.

380. SSHS and MCPSD were made aware the continued harassment and discrimination that was being directed towards Owen, based on his status as a protected class member, and perpetrated by at least eighteen (18) identified SSHS Students.

381. SSHS, after knowing about harassment, discrimination, and/or criminal conduct failed to respond to the known and reported acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Students; MCPSD, after knowing about acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Students, failed to respond to the known and reported acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Students against Owen.

382. Neither SSHS nor MCPSD responded to the pervasive discrimination and student criminal conduct in accord with state law, federal law, and District policy.

383. The SSHS Administration and/or the MCPSD conducted no investigation of the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS, nor did they, jointly and severally, or individually, properly respond to the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS

students.

384. The SSHS Administration and/or MCPSD conducted no investigation of the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS, nor did they properly respond to the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS students and/or teachers as required by state law.

385. The SSHS Administration and/or MCPSD conducted no investigation of the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS students, nor did it properly respond to the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS students as required by school policy.

386. The SSHS Administration and/or MCPSD did not make a determination whether the reported discriminatory actions, harassing actions, or criminal conduct was subject to the jurisdiction of the school district or another public agency, including law enforcement.

387. The SSHS Administration and/or MCPSD did not make a referral of the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS students, each of which is a potential violation of Montana law, M.C.A. § 20-5-209, BULLYING OF A STUDENT PROHIBITED, or M.C.A. § 45-5-220, STALKING, or M.C.A. § 45-8-201: OBSCENITY; or M.C.A. § 45-6-101: CRIMINAL MISCHIEF; or M.C.A. § 45-8-213: PRIVACY IN COMMUNICATIONS; or M.C.A. § 45-5-221:

MALICIOUS INTIMIDATION OR HARASSMENT RELATING TO CIVIL OR HUMAN RIGHTS; or M.C.A. § 45-5-625: SEXUAL ABUSE OF CHILDREN; or M.C.A. § 49-2-302: AIDING, COERCING, OR ATTEMPTING, to the law enforcement agency with appropriate jurisdiction.

388. The SSHS Administration and/or MCPSD did not make prompt notification of the alleged victim and the alleged perpetrator, or the parents or guardian of the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Students, if these students were minors.

389. The SSHS Administration and/or MCPSD did not enact the District procedure, if such procedure exists, to protect the alleged victim of behavior prohibited under the BULLY-FREE MONTANA ACT from further incidents of such behavior.

390. The SSHS Administration and/or MCPSD did not enforce the disciplinary procedure, if any such procedure exists, establishing the consequences for students found to have committed behavior prohibited under the BULLY-FREE MONTANA ACT.

391. The SSHS Administration and/or MCPSD did not follow the District procedure, if any such procedure exists, for the use of appropriate intervention and remediation for victims and perpetrators under the BULLY-FREE MONTANA ACT, or the victims of criminal acts by SSHS students.

392. The continued and escalating nature of the harassment was a foreseeable

consequence of the SSHS Administration's and MCPSD's past failure to investigate and respond to prior reports of sexual harassment, racial discrimination, national origin discrimination, gender discrimination, and/or criminal acts by at least three SSHS employees and an identified cadre of over a dozen students and against Owen, while on school property, during school hours, and while participating in school sponsored activities.

393. The incidents/acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS students against Owen were not investigated by Principal Palmer; they were not investigated by MCPSD; and, neither SSHS nor MCPSD did any type of Title VI follow up or response to the reported racial discrimination, despite the fact that the harassment was persistent, severe, and/or repeated.

394. Owen was damaged emotionally and physically by losing years of his educational life and capability to participate in athletics, his mental stability, and his overall wellbeing to this unprovoked attack on who he is as a person; Deidre was damaged emotionally and physically by the extreme and outrageous conduct of SSHS, SSHS Students, SSHS faculty, and MCPSD.

395. Plaintiffs have sustained actual damages in an amount as yet not fully realized in medical costs and treatment costs, but the total damages substantially exceed the jurisdictional limits of this court.

## COUNT 6
### NEGLIGENCE:
### SEELY SWAN HIGH SCHOOL AND MISSOULA COUNTY PUBLIC SCHOOL DISTRICT
### IN FAILING TO SUPERVISE STAFF

396. Plaintiff herein realleges paragraphs 1 through 395 above as though fully set forth herein.

397. SSHS and MCPSD had a duty to supervise teachers and coaches and act as a reasonable and prudent educational institution in addressing, among other things, student bulling behavior in schools, on school buses, at school-sponsored activities, and online, as well as any instances of teachers and staff engaging in the same activity or advocating for the bullying activity, or tacitly or overtly approving of student bullying activity.

398. SSHS and MCPSD had a duty to adopt policies to deter persistent threatening, insulting, or demeaning gestures or physical conduct, including an intentional written, verbal, or electronic communication or threat directed against a student or students regardless of the under reason for such conduct.

399. SSHS and MCPSD had a duty to supervise students and act as a reasonable and prudent educational institution in addressing, among other things, criminal conduct of students in schools, on school buses, at school-sponsored activities, and online.

400. SSHS and MCPSD had a duty to train teachers and coaches about SSHS and MCPSD policies to deter persistent threatening, insulting, or demeaning gestures

or physical conduct, including an intentional written, verbal, or electronic communication or threat directed against a student or students regardless of the under reason for such conduct.

401. SSHS and MCPSD had a duty to supervise teachers and coaches in the enforcement and implementation of SSHS and MCPSD policies to deter persistent threatening, insulting, or demeaning gestures or physical conduct, including an intentional written, verbal, or electronic communication or threat directed against a student or students regardless of the under reason for such conduct.

402. SSHS and MCPSD had a duty to supervise staff and act as a reasonable and prudent educational institution in addressing, among other things, criminal conduct of students in schools, on school buses, at school-sponsored activities, and online, combined with the obligation to report suspected criminal acts by students to law enforcement.

403. SSHS and MCPSD  were made aware  the continued harassment and discrimination that was being directed towards Owen, based on his status as a protected class member, and perpetrated by at least three (3) identified SSHS Staff Members (2 coaches and 1 teacher).

404. SSHS, after knowing about harassment, discrimination, and/or criminal conduct failed to respond to the known and reported acts of racial bigotry, discrimination,

harassment and criminal conduct by SSHS Staff Members; MCPSD, after knowing about acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members, failed to respond to the known and reported acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members against Owen.

405. Neither SSHS nor MCPSD responded to the discrimination and staff member conduct in accord with state law, federal law, and District policy.

406. The SSHS Administration and/or the MCPSD conducted no investigation of the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members, nor did they, jointly and severally, or individually, properly respond to the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members.

407. The SSHS Administration and/or MCPSD conducted no investigation of the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members, nor did they properly respond to the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS coaches and/or teachers as required by state law.

408. The SSHS Administration and/or MCPSD conducted no investigation of the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members, nor did it properly respond to the acts of racial bigotry,

discrimination, harassment and criminal conduct by SSHS Staff Members as required by school policy.

409. The SSHS Administration and/or MCPSD did not make a determination whether the reported discriminatory actions, harassing actions, or criminal conduct of SSHS Staff Members was subject to the jurisdiction of the school district or another public agency, including law enforcement.

410. The SSHS Administration and/or MCPSD did not make a referral of the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members, each of which is a potential violation of Montana law, M.C.A. § 20-5-209, BULLYING OF A STUDENT PROHIBITED,  or M.C.A. § 45-5-220, STALKING, or M.C.A. § 45-8-201: OBSCENITY; or M.C.A. § 45-6-101: CRIMINAL MISCHIEF; or M.C.A. § 45-8-213:  PRIVACY IN COMMUNICATIONS; or M.C.A. § 45-5-221: MALICIOUS INTIMIDATION OR HARASSMENT RELATING TO CIVIL OR HUMAN RIGHTS; or M.C.A. § 45-5-625: SEXUAL ABUSE OF CHILDREN; or M.C.A. § 49-2-302: AIDING, COERCING, OR ATTEMPTING, to the law enforcement agency with appropriate jurisdiction.

411. The SSHS Administration and/or MCPSD did not make prompt notification of the alleged victim and the alleged perpetrator, or the parents or guardian of the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members.

412. The SSHS Administration and/or MCPSD did not enact the District procedure, if such procedure exists, to protect the alleged victim of behavior prohibited under the BULLY-FREE MONTANA ACT from further incidents of such behavior.

413. The SSHS Administration and/or MCPSD did not enforce the disciplinary procedure, if any such procedure exists, establishing the consequences for students found to have committed behavior prohibited under the BULLY-FREE MONTANA ACT.

414. The SSHS Administration and/or MCPSD did not follow the District procedure, if any such procedure exists, for the use of appropriate intervention and remediation for victims and perpetrators under the BULLY-FREE MONTANA ACT, or the victims of criminal acts by SSHS Staff Members.

415. The continued and escalating nature of the harassment was a foreseeable consequence of the SSHS Administration's and MCPSD's past failure to investigate and respond to prior reports of sexual harassment, racial discrimination, national origin discrimination, gender discrimination, and/or criminal acts by at least three SSHS employees and an identified cadre of over a dozen students and against Owen, while on school property, during school hours, and while participating in school sponsored activities.

416. The incidents/acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members against Owen were not investigated by

Principal Palmer; they were not investigated by MCPSD; and, neither SSHS nor MCPSD did any type of Title IX follow up or response to the reported racial discrimination, despite the fact that the harassment was persistent, severe, and/or repeated.

417. Owen was damaged emotionally and physically by losing years of his educational life and capability to participate in athletics, his mental stability, and his overall wellbeing to this unprovoked attack on who he is as a person, as well as the emotional distress caused by the institutional betrayal of trusted coaches and teachers.

418. Deidre was damaged emotionally and physically by the extreme and outrageous conduct of SSHS, SSHS Students, SSHS faculty, and MCPSD, as well as the emotional distress caused by the institutional betrayal of SSHS coaches and teachers. In addition, Deidre was betrayed by the SSHS Administration, and the betrayal damages caused severe emotional distress.

419. Plaintiffs have sustained actual damages in an amount as yet not fully realized in medical costs and treatment costs, but the total damages substantially exceed the jurisdictional limits of this court.

### COUNT 6
NEGLIGENCE:
MISSOULA COUNTY PUBLIC SCHOOL DISTRICT
IN FAILING TO SUPERVISE SEELY SWAN HIGH SCHOOL ADMINISTRATION

420. Plaintiff herein realleges paragraphs 1 through 419 above as though fully set

forth herein.

421. MCPSD had a duty to supervise SSHS Administrators, including but not limited to Principals Kathleen Pecora and Kellen Palmer, and a duty to act as a reasonable and prudent educational institution in addressing, among other things, student bulling behavior in schools, on school buses, at school-sponsored activities, and online.

422. MCPSD had a duty to supervise administrator's actions in response to any instances of SSHS students engaging in bullying activity in schools, on school buses, at school-sponsored activities, and online.

423. MCPSD had a duty to supervise administrator's actions in response to any instances of teachers and staff engaging in the same activity or advocating for the bullying activity, or tacitly or overtly approving of student bullying activity.

424. MCPSD had a duty to supervise administrator's actions in response to any instances of ignoring SSHS students engaging in bullying activities in schools, on school buses, at school-sponsored activities, and online , as well as teachers and staff engaging in the same activity or advocating for the bullying activity, or tacitly or overtly approving of student bullying activity.

425. MCPSD had a duty to adopt policies to deter persistent threatening, insulting, or demeaning gestures or physical conduct, including an intentional written, verbal, or electronic communication or threat directed against a student or students

regardless of the under reason for such conduct.

426. MCPSD had a duty to supervise students and act as a reasonable and prudent educational institution in addressing, among other things, criminal conduct of students in schools, on school buses, at school-sponsored activities, and online.

427. MCPSD had a duty to train administrators about SSHS and MCPSD policies to deter persistent threatening, insulting, or demeaning gestures or physical conduct, including an intentional written, verbal, or electronic communication or threat directed against a student or students regardless of the under reason for such conduct.

428. MCPSD had a duty to supervise administrators, teachers and coaches in the enforcement and implementation of SSHS and MCPSD policies to deter persistent threatening, insulting, or demeaning gestures or physical conduct, including an intentional written, verbal, or electronic communication or threat directed against a student or students regardless of the under reason for such conduct.

429. MCPSD had a duty to supervise SSHS Administrators and act as a reasonable and prudent educational institution in addressing, among other things, criminal conduct of students in schools, on school buses, at school-sponsored activities, and online, combined with the obligation to report suspected criminal acts by students to law enforcement.

430. MCPSD  was made aware the continued harassment and discrimination that was being directed towards Owen, based on his status as a protected class member, and perpetrated by at least three (3) identified SSHS Staff Members (2 coaches and 1 teacher).

431. MCPSD, after knowing about acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Students, and the apparent approval of those actions by the SSHS Administration, failed to respond to the known and reported acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members against Owen.

432. MCPSD, after knowing about acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members, and the apparent approval of those actions by the SSHS Administration, failed to respond to the known and reported acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members against Owen.

433. MCPSD did not respond to the discrimination and staff member conduct in accord with state law, federal law, and District policy.

434. MCPSD conducted no investigation of the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members, and the apparent approval of those actions by the SSHS Administration, nor did they, jointly and severally, or individually, properly respond to the acts of racial bigotry,

discrimination, harassment and criminal conduct by SSHS Staff Members.

435. MCPSD conducted no investigation of the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members, and the apparent approval of those actions by the SSHS Administration, nor did they properly respond to the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS coaches and/or teachers as required by state law.

436. MCPSD conducted no investigation of the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members, and the apparent approval of those actions by the SSHS Administration, nor did it properly respond to the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members as required by school policy.

437. MCPSD did not make a determination whether the reported discriminatory actions, harassing actions, or criminal conduct of SSHS Staff Members, and the apparent approval of those actions by the SSHS Administration,  was subject to the jurisdiction of the school district or another public agency, including law enforcement.

438. MCPSD did not make a referral of the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members, and the apparent approval of those actions by the SSHS Administration, each of which is a potential violation of Montana law, M.C.A. § 20-5-209, BULLYING OF A

STUDENT PROHIBITED, or M.C.A. § 45-5-220, STALKING, or M.C.A. § 45-8-201: OBSCENITY; or M.C.A. § 45-6-101: CRIMINAL MISCHIEF; or M.C.A. § 45-8-213: PRIVACY IN COMMUNICATIONS; or M.C.A. § 45-5-221: MALICIOUS INTIMIDATION OR HARASSMENT RELATING TO CIVIL OR HUMAN RIGHTS; or M.C.A. § 45-5-625: SEXUAL ABUSE OF CHILDREN; or M.C.A. § 49-2-302: AIDING, COERCING, OR ATTEMPTING, to the law enforcement agency with appropriate jurisdiction.

439. The incidents/acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members against Owen, and the apparent approval of those actions by the SSHS Administration, were not investigated by MCPSD; and, MCPSD did any type of Title IX follow up or response to the reported racial discrimination, despite the fact that the harassment was persistent, severe, and/or repeated.

440. Owen was damaged emotionally and physically by losing years of his educational life and capability to participate in athletics, his mental stability, and his overall wellbeing to this unprovoked attack on who he is as a person, as well as the emotional distress caused by the institutional betrayal of trusted coaches and teachers.

441. Deidre was damaged emotionally and physically by the extreme and outrageous conduct of SSHS, SSHS Students, SSHS faculty, and MCPSD, as well as the

emotional distress caused by the institutional betrayal of SSHS coaches and teachers.  In addition, Deidre was betrayed by the SSHS Administration, and the betrayal damages caused severe emotional distress.

442. Plaintiffs have sustained actual damages in an amount as yet not fully realized in medical costs and treatment costs, but the total damages substantially exceed the jurisdictional limits of this court.

**COUNT 8**

VIOLATION OF FEDERAL CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. § 1983:
SEELEY SWAN HIGH SCHOOL AND MISSOULA COUNTY PUBLIC SCHOOL DISTRICT

443. Plaintiffs herein reallege paragraphs 1 through 442 above as though fully set forth herein

444. Under the Fourteenth Amendment to the United States Constitution, individual have the right to equal protection under the law.

445. This United States Constitutional Right includes the right be free from discrimination from any government entity as well as protection from others on government property.

446. Under Federal law, a person's Constitutional rights cannot be infringed by a person or government entity acting under the color of law; any such actor is liable to the individual who the actor "subjects, or causes to be subjected . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

447. The Defendants have continually violated the rights of Owen set forth in the Fourteenth Amendment and in violation of 42 U.S.C. § 1983.

448. SSHS and MCPSD had a duty to supervise administrators, teachers, coaches and students while acting as a reasonable and prudent educational institution in addressing, among other things, student bulling behavior in schools, on school buses, at school-sponsored activities, and online, as well as any instances of teachers and staff engaging in the same activity or advocating for the bullying activity, or tacitly or overtly approving of student bullying activity.

449. SSHS and MCPSD had a regulatory duty to adopt policies to deter persistent threatening, insulting, or demeaning gestures or physical conduct, including an intentional written, verbal, or electronic communication or threat directed against a student or students regardless of the under reason for such conduct.

450. SSHS and MCPSD had a duty to train administrators, teachers and coaches about SSHS and MCPSD policies to deter persistent threatening, insulting, or demeaning gestures or physical conduct, including an intentional written, verbal, or electronic communication or threat directed against a student or students regardless of the under reason for such conduct.

451. SSHS and MCPSD were made aware the continued harassment and discrimination that was being directed towards Owen, based on his status as a protected class member, and perpetrated by at least three (3) identified SSHS Staff

Members (2 coaches and 1 teacher), eighteen (18) identified SSHS Students, and activity by other unidentified students or actors on SSHS property.

452. SSHS and MDPSD, after knowing about harassment, discrimination, and/or criminal conduct failed to respond to the known and reported acts of racial bigotry, discrimination, harassment and criminal conduct by at least three (3) identified SSHS Staff Members (2 coaches and 1 teacher), eighteen (18) identified SSHS Students, and activity by other unidentified students or actors on SSHS property against Owen.

453. Neither SSHS nor MCPSD responded to the discrimination and staff member conduct in accord with state law, federal law, and District policy.

454. The SSHS Administration and/or the MCPSD conducted no investigation of the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members, nor did they, jointly and severally, or individually, properly respond to the acts of racial bigotry, discrimination, harassment and criminal conduct by at least three (3) identified SSHS Staff Members (2 coaches and 1 teacher), eighteen (18) identified SSHS Students, and activity by other unidentified students or actors on SSHS property against Owen.

455. The SSHS Administration and/or MCPSD did not make a referral of the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members, each of which is a potential violation of Montana law, M.C.A. § 20-

5-209, BULLYING OF A STUDENT PROHIBITED,   or M.C.A. § 45-5-220, STALKING, or M.C.A. § 45-8-201: OBSCENITY; or M.C.A. § 45-6-101: CRIMINAL MISCHIEF; or M.C.A. § 45-8-213: PRIVACY IN COMMUNICATIONS; or M.C.A. § 45-5-221: MALICIOUS INTIMIDATION OR HARASSMENT RELATING TO CIVIL OR HUMAN RIGHTS; or M.C.A. § 45-5-625: SEXUAL ABUSE OF CHILDREN; or M.C.A. § 49-2-302: AIDING, COERCING, OR ATTEMPTING, to the law enforcement agency with appropriate jurisdiction.

456. The actions and inactions of SSHS and MCPSD violated Owen's U.S. Constitutional Rights and violated the protections provided by 42 U.S.C. § 1983.

457. Owen was damaged emotionally and physically by losing years of his educational life and capability to participate in athletics, his mental stability, and his overall wellbeing to this unprovoked attack on who he is as a person, as well as the emotional distress caused by the institutional betrayal of trusted coaches and teachers.

458. Deidre was damaged emotionally and physically by the extreme and outrageous conduct of SSHS, SSHS Students, SSHS faculty, and MCPSD, as well as the emotional distress caused by the institutional betrayal of SSHS coaches and teachers. In addition, Deidre was betrayed by the SSHS Administration, and the betrayal damages caused severe emotional distress due to the violation of her rights under 42 U.S.C. § 1983.

459. Plaintiffs have sustained actual damages in an amount as yet not fully realized in medical costs and treatment costs, but the total damages substantially exceed the jurisdictional limits of this court.

## COUNT 9
### VIOLATIONS OF MONTANA STATE CONSTITUTIONAL RIGHTS
### SEELEY SWAN HIGH SCHOOL AND MISSOULA COUNTY PUBLIC SCHOOL DISTRICT

460. Plaintiffs herein reallege paragraphs 1 through 459 above as though fully set forth herein

461. Under Article II, Section 4, of the Montana Constitution, individuals have the right to equal protection under the law.

462. The Montana Constitution grants the right of individuals within the State of Montana to be free from discrimination based on a person's race, color, sex, culture, social origin, or condition, or political or religious ideas.

463. The Defendants have continually violated the rights of Owen set forth in the Article II, Section 4, of the Montana Constitution.

464. SSHS and MCPSD had a duty to supervise administrators, teachers, coaches and students while acting as a reasonable and prudent educational institution in addressing, among other things, student bulling behavior in schools, on school buses, at school-sponsored activities, and online, as well as any instances of teachers and staff engaging in the same activity or advocating for the bullying activity, or tacitly or overtly approving of student bullying activity.

465. SSHS and MCPSD had a regulatory duty to adopt policies to deter persistent threatening, insulting, or demeaning gestures or physical conduct, including an intentional written, verbal, or electronic communication or threat directed against a student or students regardless of the under reason for such conduct.

466. SSHS and MCPSD had a duty to train administrators, teachers and coaches about SSHS and MCPSD policies to deter persistent threatening, insulting, or demeaning gestures or physical conduct, including an intentional written, verbal, or electronic communication or threat directed against a student or students regardless of the under reason for such conduct.

467. SSHS and MCPSD were made aware the continued harassment and discrimination that was being directed towards Owen, based on his status as a protected class member, and perpetrated by at least three (3) identified SSHS Staff Members (2 coaches and 1 teacher), eighteen (18) identified SSHS Students, and activity by other unidentified students or actors on SSHS property.

468. SSHS and MDPSD, after knowing about harassment, discrimination, and/or criminal conduct failed to respond to the known and reported acts of racial bigotry, discrimination, harassment and criminal conduct by at least three (3) identified SSHS Staff Members (2 coaches and 1 teacher), eighteen (18) identified SSHS Students, and activity by other unidentified students or actors on SSHS property against Owen.

469. Neither SSHS nor MCPSD responded to the discrimination and staff member conduct in accord with state law, federal law, and District policy.

470. The SSHS Administration and/or the MCPSD conducted no investigation of the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members, nor did they, jointly and severally, or individually, properly respond to the acts of racial bigotry, discrimination, harassment and criminal conduct by at least three (3) identified SSHS Staff Members (2 coaches and 1 teacher), eighteen (18) identified SSHS Students, and activity by other unidentified students or actors on SSHS property against Owen.

471. The SSHS Administration and/or MCPSD did not make a referral of the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members, each of which is a potential violation of Montana law, M.C.A. § 20-5-209, BULLYING OF A STUDENT PROHIBITED,  or M.C.A. § 45-5-220, STALKING, or M.C.A. § 45-8-201: OBSCENITY; or M.C.A. § 45-6-101: CRIMINAL MISCHIEF; or M.C.A. § 45-8-213: PRIVACY IN COMMUNICATIONS; or M.C.A. § 45-5-221: MALICIOUS INTIMIDATION OR HARASSMENT RELATING TO CIVIL OR HUMAN RIGHTS; or M.C.A. § 45-5-625: SEXUAL ABUSE OF CHILDREN; or M.C.A. § 49-2-302: AIDING, COERCING, OR ATTEMPTING, to the law enforcement agency with appropriate jurisdiction.

472. The actions and inactions of SSHS and MCPSD violated Owen's US

Constitutional Rights and violated the protections provided by Article II, Section 4, of the Montana Constitution.

473. Owen was damaged emotionally and physically by losing years of his educational life and capability to participate in athletics, his mental stability, and his overall wellbeing to this unprovoked attack on who he is as a person, as well as the emotional distress caused by the institutional betrayal of trusted coaches and teachers.

474. Deidre was damaged emotionally and physically by the extreme and outrageous conduct of SSHS, SSHS Students, SSHS faculty, and MCPSD, as well as the emotional distress caused by the institutional betrayal of SSHS coaches and teachers.  In addition, Deidre was betrayed by the SSHS Administration, and the betrayal damages caused severe emotional distress due to the violation of her rights under Article II, Section 4, of the Montana Constitution.

475. Plaintiffs have sustained actual damages in an amount as yet not fully realized in medical costs and treatment costs, but the total damages substantially exceed the jurisdictional limits of this court.

## COUNT 10
### DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT:
### SEELY SWAN HIGH SCHOOL AND MISSOULA COUNTY PUBLIC SCHOOL DISTRICT
### FAILING TO GRANT OWEN MERCADO A REASONABLE ACCOMMODATION

476. Plaintiffs herein reallege paragraphs 1 through 475 above as though fully set forth herein.

477. Owen is disabled as that term is used and interpreted under the Americans with Disabilities Act of 1990 ("ADA").

478. SSHS and MCPSD were made aware of the Owen's disabilities.

479. Upon having knowledge of the disabilities, SSHS and/or MCPSD were under a duty to make reasonable accommodations to, among other things, help with the learning and care of Owen, which included the reasonable accommodation request for SSHS and/or MCPSD take actions to eliminate the known harassing environment created by SSHS, including the tolerance of the actions of at least three (3) identified SSHS Staff Members (2 coaches and 1 teacher), eighteen (18) identified SSHS Students, and activity by other unidentified students or actors on SSHS property against Owen.

480. The Defendants failed to meet this duty of care by completely ignoring the requests of Deidre for a reasonable accommodation or the equal treatment of her disabled son under the ADA.

481. This failure caused emotional and physical damage to Owen for which he may never be able to fully recover.

482. Plaintiffs have sustained actual damages in an amount as yet not fully realized in medical costs and treatment costs, but the total damages substantially exceed the jurisdictional limits of this court.

## COUNT 11
VIOLATION OF OWEN MERCADO'S RIGHT TO BE FREE FROM PERSONAL INJURY UNDER
M.C.A. §§ 49-1-101 – 102:
SEELEY SWAN HIGH SCHOOL AND MISSOULA COUNTY PUBLIC SCHOOL DISTRICT

483. Plaintiffs herein reallege paragraphs 1 through 304 above as though fully set forth herein.

484. M.C.A. § 49-1-101 provides that every person has the right of protection from . . . personal insult, defamation, and injury to the person's personal relations.

485. M.C.A. § 49-1-102 guarantees the right to be free from discrimination because of race, creed, religion, color, sex, physical or **mental disability**, age, or national origin is recognized as and declared to be a civil right.

486. The Defendants have continually violated the rights of Owen set forth in M.C.A. §§ 49-1-101 – 102.

487. SSHS and MCPSD had a duty to supervise administrators, teachers, coaches and students while acting as a reasonable and prudent educational institution in addressing, among other things, student bulling behavior in schools, on school buses, at school-sponsored activities, and online, as well as any instances of teachers and staff engaging in the same activity or advocating for the bullying activity, or tacitly or overtly approving of student bullying activity.

488. SSHS and MCPSD had a regulatory duty to adopt policies to deter persistent threatening, insulting, or demeaning gestures or physical conduct, including an intentional written, verbal, or electronic communication or threat directed

against a student or students regardless of the under reason for such conduct.

489. SSHS and MCPSD had a duty to train administrators, teachers and coaches about SSHS and MCPSD policies to deter persistent threatening, insulting, or demeaning gestures or physical conduct, including an intentional written, verbal, or electronic communication or threat directed against a student or students regardless of the under reason for such conduct.

490. SSHS and MCPSD were made aware the continued harassment and discrimination that was being directed towards Owen, based on his status as a protected class member, and perpetrated by at least three (3) identified SSHS Staff Members (2 coaches and 1 teacher), eighteen (18) identified SSHS Students, and activity by other unidentified students or actors on SSHS property.

491. SSHS and MDPSD, after knowing about harassment, discrimination, and/or criminal conduct failed to respond to the known and reported acts of racial bigotry, discrimination, harassment and criminal conduct by at least three (3) identified SSHS Staff Members (2 coaches and 1 teacher), eighteen (18) identified SSHS Students, and activity by other unidentified students or actors on SSHS property against Owen.

492. Neither SSHS nor MCPSD responded to the discrimination and staff member conduct in accord with state law, federal law, and District policy.

493. The SSHS Administration and/or the MCPSD conducted no investigation of the

acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS
Staff Members, nor did they, jointly and severally, or individually, properly
respond to the acts of racial bigotry, discrimination, harassment and criminal
conduct by at least three (3) identified SSHS Staff Members (2 coaches and 1
teacher), eighteen (18) identified SSHS Students, and activity by other
unidentified students or actors on SSHS property against Owen.

494. The SSHS Administration and/or MCPSD did not make a referral of the acts of
racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff
Members, each of which is a potential violation of Montana law, M.C.A. § 20-
5-209, BULLYING OF A STUDENT PROHIBITED,  or M.C.A. § 45-5-220,
STALKING, or M.C.A. § 45-8-201: OBSCENITY; or M.C.A. § 45-6-101:
CRIMINAL MISCHIEF; or M.C.A. § 45-8-213:  PRIVACY IN COMMUNICATIONS; or
M.C.A. § 45-5-221: MALICIOUS INTIMIDATION OR HARASSMENT RELATING TO
CIVIL OR HUMAN RIGHTS; or M.C.A. § 45-5-625: SEXUAL ABUSE OF CHILDREN;
or M.C.A. § 49-2-302: AIDING, COERCING, OR ATTEMPTING, to the law
enforcement agency with appropriate jurisdiction.

495. The actions and inactions of SSHS and MCPSD violated Owen's US
Constitutional Rights and violated the protections provided by M.C.A. §§ 49-
1-101 – 102.

496. Owen was damaged emotionally and physically by losing years of his educational

life and capability to participate in athletics, his mental stability, and his overall wellbeing to this unprovoked attack on who he is as a person, as well as the emotional distress caused by the institutional betrayal of trusted coaches and teachers.

497. Deidre was damaged emotionally and physically by the extreme and outrageous conduct of SSHS, SSHS Students, SSHS faculty, and MCPSD, as well as the emotional distress caused by the institutional betrayal of SSHS coaches and teachers.  In addition, Deidre was betrayed by the SSHS Administration, and the betrayal damages caused severe emotional distress due to the violation of her rights under M.C.A. §§ 49-1-101 – 102.

498. Plaintiffs have sustained actual damages in an amount as yet not fully realized in medical costs and treatment costs, but the total damages substantially exceed the jurisdictional limits of this court.

## COUNT 12
VIOLATION OF OWEN MERCADO'S RIGHT TO BE FREE FROM DISCRIMINATION UNDER M.C.A. § 49-1-102:
SEELEY SWAN HIGH SCHOOL AND MISSOULA COUNTY PUBLIC SCHOOL DISTRICT

499. Plaintiffs herein reallege paragraphs 1 through 499 above as though fully set forth herein.

500. M.C.A. § 49-1-102 guarantees the right to be free from discrimination because of race, creed, religion, color, sex, physical or **mental disability**, age, or national origin is recognized as and declared to be a civil right.

501. The Defendants have continually violated the rights of Owen set forth in M.C.A. § 49-1-102.

502. SSHS and MCPSD had a duty to supervise administrators, teachers, coaches and students while acting as a reasonable and prudent educational institution in addressing, among other things, student bulling behavior in schools, on school buses, at school-sponsored activities, and online, as well as any instances of teachers and staff engaging in the same activity or advocating for the bullying activity, or tacitly or overtly approving of student bullying activity.

503. SSHS and MCPSD had a regulatory duty to adopt policies to deter persistent threatening, insulting, or demeaning gestures or physical conduct, including an intentional written, verbal, or electronic communication or threat directed against a student or students regardless of the under reason for such conduct.

504. SSHS and MCPSD had a duty to train administrators, teachers and coaches about SSHS and MCPSD policies to deter persistent threatening, insulting, or demeaning gestures or physical conduct, including an intentional written, verbal, or electronic communication or threat directed against a student or students regardless of the under reason for such conduct.

505. SSHS and MCPSD were made aware the continued harassment and discrimination that was being directed towards Owen, based on his status as a protected class member, and perpetrated by at least three (3) identified SSHS

Staff Members (2 coaches and 1 teacher), eighteen (18) identified SSHS

Students, and activity by other unidentified students or actors on SSHS property.

506. SSHS and MDPSD, after knowing about harassment, discrimination, and/or

criminal conduct failed to respond to the known and reported acts of racial

bigotry, discrimination, harassment and criminal conduct by at least three (3)

identified SSHS Staff Members (2 coaches and 1 teacher), eighteen (18)

identified SSHS Students, and activity by other unidentified students or actors

on SSHS property against Owen.

507. Neither SSHS nor MCPSD responded to the discrimination and staff member

conduct in accord with state law, federal law, and District policy.

508. The SSHS Administration and/or the MCPSD conducted no investigation of the

acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS

Staff Members, nor did they, jointly and severally, or individually, properly

respond to the acts of racial bigotry, discrimination, harassment and criminal

conduct by at least three (3) identified SSHS Staff Members (2 coaches and 1

teacher), eighteen (18) identified SSHS Students, and activity by other

unidentified students or actors on SSHS property against Owen.

509. The SSHS Administration and/or MCPSD did not make a referral of the acts of

racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff

Members, each of which is a potential violation of Montana law, M.C.A. § 20-

5-209, BULLYING OF A STUDENT PROHIBITED,   or M.C.A. § 45-5-220,
STALKING, or M.C.A. § 45-8-201: OBSCENITY; or M.C.A. § 45-6-101:
CRIMINAL MISCHIEF; or M.C.A. § 45-8-213: PRIVACY IN COMMUNICATIONS; or
M.C.A. § 45-5-221: MALICIOUS INTIMIDATION OR HARASSMENT RELATING TO
CIVIL OR HUMAN RIGHTS; or M.C.A. § 45-5-625: SEXUAL ABUSE OF CHILDREN;
or M.C.A. § 49-2-302: AIDING, COERCING, OR ATTEMPTING, to the law
enforcement agency with appropriate jurisdiction.

510. The actions and inactions of SSHS and MCPSD violated Owen's US
Constitutional Rights and violated the protections provided by M.C.A. § 49-1-
102.

511. Owen was damaged emotionally and physically by losing years of his educational
life and capability to participate in athletics, his mental stability, and his overall
wellbeing to this unprovoked attack on who he is as a person, as well as the
emotional distress caused by the institutional betrayal of trusted coaches and
teachers.

512. Deidre was damaged emotionally and physically by the extreme and outrageous
conduct of SSHS, SSHS Students, SSHS faculty, and MCPSD, as well as the
emotional distress caused by the institutional betrayal of SSHS coaches and
teachers.  In addition, Deidre was betrayed by the SSHS Administration, and the
betrayal damages caused severe emotional distress due to the violation of her

rights under M.C.A. § 49-1-102.

513. Plaintiffs have sustained actual damages in an amount as yet not fully realized in medical costs and treatment costs, but the total damages substantially exceed the jurisdictional limits of this court.

### COUNT 13
VIOLATION OF OWEN MERCADO'S RIGHT TO BE FREE FROM DISCRIMINATION IN EDUCATION UNDER M.C.A. § 49-2-307:
SEELEY SWAN HIGH SCHOOL AND MISSOULA COUNTY PUBLIC SCHOOL DISTRICT

514. Plaintiffs herein reallege paragraphs 1 through 513 above as though fully set forth herein.

515. M.C.A. § 49-2-307 provides that it is an unlawful discriminatory practice for an educational institution to exclude, expel, limit, or otherwise discriminate against a person enrolled as a student in the terms, conditions or privileges of the institution because of race, creed, color, national origin, or disability

516. The Defendants have continually violated the rights of Owen set forth in M.C.A. § 49-2-307.

517. SSHS and MCPSD had a duty to supervise administrators, teachers, coaches and students while acting as a reasonable and prudent educational institution in addressing, among other things, student bulling behavior in schools, on school buses, at school-sponsored activities, and online, as well as any instances of teachers and staff engaging in the same activity or advocating for the bullying activity, or tacitly or overtly approving of student bullying activity.

518. SSHS and MCPSD had a regulatory duty to adopt policies to deter persistent threatening, insulting, or demeaning gestures or physical conduct, including an intentional written, verbal, or electronic communication or threat directed against a student or students regardless of the under reason for such conduct.

519. SSHS and MCPSD had a duty to train administrators, teachers and coaches about SSHS and MCPSD policies to deter persistent threatening, insulting, or demeaning gestures or physical conduct, including an intentional written, verbal, or electronic communication or threat directed against a student or students regardless of the under reason for such conduct.

520. SSHS and MCPSD were made aware the continued harassment and discrimination that was being directed towards Owen, based on his status as a protected class member, and perpetrated by at least three (3) identified SSHS Staff Members (2 coaches and 1 teacher), eighteen (18) identified SSHS Students, and activity by other unidentified students or actors on SSHS property.

521. SSHS and MDPSD, after knowing about harassment, discrimination, and/or criminal conduct failed to respond to the known and reported acts of racial bigotry, discrimination, harassment and criminal conduct by at least three (3) identified SSHS Staff Members (2 coaches and 1 teacher), eighteen (18) identified SSHS Students, and activity by other unidentified students or actors on SSHS property against Owen.

522. Neither SSHS nor MCPSD responded to the discrimination and staff member conduct in accord with state law, federal law, and District policy.

523. The SSHS Administration and/or the MCPSD conducted no investigation of the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members, nor did they, jointly and severally, or individually, properly respond to the acts of racial bigotry, discrimination, harassment and criminal conduct by at least three (3) identified SSHS Staff Members (2 coaches and 1 teacher), eighteen (18) identified SSHS Students, and activity by other unidentified students or actors on SSHS property against Owen.

524. The SSHS Administration and/or MCPSD did not make a referral of the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members, each of which is a potential violation of Montana law, M.C.A. § 20-5-209, BULLYING OF A STUDENT PROHIBITED, or M.C.A. § 45-5-220, STALKING, or M.C.A. § 45-8-201: OBSCENITY; or M.C.A. § 45-6-101: CRIMINAL MISCHIEF; or M.C.A. § 45-8-213: PRIVACY IN COMMUNICATIONS; or M.C.A. § 45-5-221: MALICIOUS INTIMIDATION OR HARASSMENT RELATING TO CIVIL OR HUMAN RIGHTS; or M.C.A. § 45-5-625: SEXUAL ABUSE OF CHILDREN; or M.C.A. § 49-2-302: AIDING, COERCING, OR ATTEMPTING, to the law enforcement agency with appropriate jurisdiction.

525. The actions and inactions of SSHS and MCPSD violated Owen's US

Constitutional Rights and violated the protections provided by M.C.A. § 49-2-307.

526. Owen was damaged emotionally and physically by losing years of his educational life and capability to participate in athletics, his mental stability, and his overall wellbeing to this unprovoked attack on who he is as a person, as well as the emotional distress caused by the institutional betrayal of trusted coaches and teachers.

527. Deidre was damaged emotionally and physically by the extreme and outrageous conduct of SSHS, SSHS Students, SSHS faculty, and MCPSD, as well as the emotional distress caused by the institutional betrayal of SSHS coaches and teachers.  In addition, Deidre was betrayed by the SSHS Administration, and the betrayal damages caused severe emotional distress due to the violation of her rights under M.C.A. § 49-2-307.

528. Plaintiffs have sustained actual damages in an amount as yet not fully realized in medical costs and treatment costs, but the total damages substantially exceed the jurisdictional limits of this court.

### COUNT 14
VIOLATION OF OWEN MERCADO'S RIGHT TO BE FREE FROM RETALIATION FOR
REPORTING DISCRIMINATION IN EDUCATION UNDER M.C.A. § 49-2-301:
SEELEY SWAN HIGH SCHOOL AND MISSOULA COUNTY PUBLIC SCHOOL DISTRICT

529. Plaintiffs herein reallege paragraphs 1 through 528 above as though fully set forth herein.

530. M.C.A. § 49-2-301 provides that it is an unlawful discriminatory practice for an educational institution to discriminate against an individual who has reported discrimination under Chapter 49.

531. Owen and his mother Deidre have reported no less than nineteen (19) different acts of racial bigotry, discrimination, harassment, and criminal conduct by at least three (3) identified SSHS Staff Members (2 coaches and 1 teacher), eighteen (18) identified SSHS Students, and activity by other unidentified students or actors on SSHS property.

532. In response to these complaints, Defendants have retaliated against Owen, and Deidre, in contravention to the rights and protections set forth in M.C.A. § 49-2-301.

533. SSHS and MCPSD were made aware the continued harassment and discrimination that was being directed towards Owen, based on his status as a protected class member, and perpetrated by at least three (3) identified SSHS Staff Members (2 coaches and 1 teacher), eighteen (18) identified SSHS Students, and activity by other unidentified students or actors on SSHS property.

534. SSHS and MDPSD, after knowing about harassment, discrimination, and/or criminal conduct failed to respond to the known and reported acts of racial bigotry, discrimination, harassment and criminal conduct by at least three (3) identified SSHS Staff Members (2 coaches and 1 teacher), eighteen (18)

identified SSHS Students, and activity by other unidentified students or actors on SSHS property against Owen.

535. Neither SSHS nor MCPSD responded to the discrimination and staff member conduct in accord with state law, federal law, and District policy.

536. The SSHS Administration and/or the MCPSD conducted no investigation of the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members, nor did they, jointly and severally, or individually, properly respond to the acts of racial bigotry, discrimination, harassment and criminal conduct by at least three (3) identified SSHS Staff Members (2 coaches and 1 teacher), eighteen (18) identified SSHS Students, and activity by other unidentified students or actors on SSHS property against Owen.

537. The SSHS Administration and/or MCPSD did not make a referral of the acts of racial bigotry, discrimination, harassment and criminal conduct by SSHS Staff Members, each of which is a potential violation of Montana law, M.C.A. § 20-5-209, BULLYING OF A STUDENT PROHIBITED,   or M.C.A. § 45-5-220, STALKING, or M.C.A. § 45-8-201: OBSCENITY; or M.C.A. § 45-6-101: CRIMINAL MISCHIEF; or M.C.A. § 45-8-213:  PRIVACY IN COMMUNICATIONS; or M.C.A. § 45-5-221: MALICIOUS INTIMIDATION OR HARASSMENT RELATING TO CIVIL OR HUMAN RIGHTS; or M.C.A. § 45-5-625: SEXUAL ABUSE OF CHILDREN; or M.C.A. § 49-2-302: AIDING, COERCING, OR ATTEMPTING, to the law

enforcement agency with appropriate jurisdiction.

538. The actions and inactions of SSHS and MCPSD violated Owen's US Constitutional Rights and violated the protections provided by M.C.A. § 49-2-301.

539. Owen was damaged emotionally and physically by losing years of his educational life and capability to participate in athletics, his mental stability, and his overall wellbeing to this unprovoked attack on who he is as a person, as well as the emotional distress caused by the institutional betrayal of trusted coaches and teachers.

540. Deidre was damaged emotionally and physically by the extreme and outrageous conduct of SSHS, SSHS Students, SSHS faculty, and MCPSD, as well as the emotional distress caused by the institutional betrayal of SSHS coaches and teachers.  In addition, Deidre was betrayed by the SSHS Administration, and the betrayal damages caused severe emotional distress due to the violation of her rights under M.C.A. § 49-2-301.

541. Plaintiffs have sustained actual damages in an amount as yet not fully realized in medical costs and treatment costs, but the total damages substantially exceed the jurisdictional limits of this court.

## COUNT 15
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS:
### SEELEY SWAN HIGH SCHOOL AND MISSOULA COUNTY PUBLIC SCHOOL DISTRICT

542. Plaintiffs herein reallege paragraphs 1 through 541 above as though fully set forth herein.

543. Defendants acts and/or omissions were negligent acts.

544. Defendants acts and/or omissions were significant enough to make reasonably foreseeable the emotional distress caused by this conduct.

545. As a direct result of Defendants' conduct, Owen has suffered serious or severe emotional distress manifesting itself by, among other things, suicide attempts, self-inflicted cutting wounds, depression, and severe anxiety.

546. As a direct result of Defendants' conduct, Deidre has suffered serious or severe emotional distress while having to watch her son go through this horrific ordeal for many years.

## COUNT 16
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS:
### SEELEY SWAN HIGH SCHOOL AND MISSOULA COUNTY PUBLIC SCHOOL DISTRICT

547. Plaintiffs herein reallege paragraphs 1 through 546 above as though fully set forth herein.

548. Defendants acts and/or omissions were negligent acts.

549. Defendants acts and/or omissions were significant enough to make reasonably foreseeable the emotional distress caused by this conduct.

550. As a direct result of Defendants' conduct, Owen has suffered serious or severe emotional distress manifesting itself by, among other things, suicide attempts, self-inflicted cutting wounds, depression, and severe anxiety.

551. As a direct result of Defendants' conduct, Deidre has suffered serious or severe emotional distress while having to watch her son go through this horrific ordeal for many years.

## VI.
## Damages

552. Plaintiff herein realleges paragraphs 1 through 551 above as though fully set forth herein.

553. As alleged in each Count, Plaintiffs have sustained actual damages in an amount as yet not fully realized in medical costs and treatment costs, as well as intangible special damages and punitive damages, but the total damages alleged in this matter substantially exceeds the jurisdictional limits of this court.

554. Plaintiffs' damages under each Count 1 – 16, Section V, *supra,* generally include, but are not limited to:

    a. the cost of past counseling;

    b. the cost of past therapy;

    c. past pain and suffering;

    d. past emotional distress damages;

    e. past costs of relocation and education;

   f.  the cost of future counseling;

   g.  the cost of future therapy;

   h.  the cost of future educational opportunities lost due to the discrimination;

   i.  the future pain and suffering;

   j.  the future severe emotional distress;

   k.  the cost of experts and medical professionals;

   l.  litigation costs and attorney's fees;

   m. exemplary damages which are available under statute;

   n.  punitive damages which are available under statute;

   o.  exemplary and punitive damage which cannot yet be quantified, but are the purview of the jury to determine.

## VII.
## Attorney's Fees and Costs

555. Plaintiff herein realleges paragraphs 1 through 554 above as though fully set forth herein.

556. Under 42 U.S.C.A § 1988(b), it states that "in any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, Title IX of Public law 92-318, [], the court in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Plaintiff, therefore, seeks the recovery of the attorney's fees and costs for this

matter under, among other statutes, the Civil Rights Attorney's Fee Awards Act of 1976, 42 U.S.C.A. § 1988(b).

557. Plaintiff seeks the recovery of the attorney's fees and costs for this matter under, among other statutes, 42 U.S.C. Code Section 12188(a)(1) which provides for recovery of the remedies under § 204(a) of the federal Civil Rights Act of 1964 (Civil Rights Act), 42 U.S.C. § 2000a-3(a), including attorney's fees and costs.

558. Plaintiff seeks the recovery of the attorney's fees and costs for this matter under, among other statutes, 42 U.S.C. § 12205, wherein the court may award attorneys' fees at its discretion.

559. Plaintiffs, furthermore, seek the recovery of all reasonable attorney's fees and costs as permitted by any applicable statute, state or federal.

560. Plaintiffs, furthermore, seek the recovery of all reasonable attorney's fees and costs as permitted by the available equitable remedies any applicable under state or federal judiciary discretion.

## VIII.
## Exemplary Damages

561. Plaintiff herein realleges paragraphs 1 through 560 above as though fully set forth herein.

562. The continued and permitted discrimination and harassment at the SSHS educational institution, by Students, eighteen (18) identified to SSHS and others unknown, and by at least three SSHS employees, was so expansive and endured

so long that it is by definition persistent, severe and repeated, such that the conduct, and inaction of SSHS that it aided, abetted, compelled, or coerced the Students, and in at least three cases the employees of SSHS, to commit acts of overt, offensive, and disgusting discrimination and harassment that facially required reporting to law enforcement for the investigation of potential criminal acts, including but not limited to:

    a.  M.C.A. § 45-8-201: Obscenity;

    b.  M.C.A. § 45-6-101: Criminal mischief;

    c.  M.C.A. § 45-8-213:  Privacy in communications;

    d.  M.C.A. § 45-5-221: Malicious intimidation or harassment relating to civil or human rights;

    e.  M.C.A. § 45-5-625: Sexual abuse of Children.

    f.  M.C.A. § 45-5-220: Stalking;

    g.  M.C.A. § 49-2-302: Aiding, coercing, or attempting; and

    h.  M.C.A. § 45-5-222:   Sentence enhancement – offense committed because of victim's race, creed, religion, color, national origin, or involvement in civil rights or human rights activities.

563. Defendants conduct, individually, in concert, or in combination, demonstrates a level of actual malice and/or actual fraud in breaching their duties to students and parents, entitling the Plaintiffs to punitive damages under M.C.A. § 27-1-220.

564. Defendants conduct, individually, in concert, or in combination, demonstrates the Defendants' conduct was indifferent to the federally protected rights of others

and, the participation of SSHS employees in the harassment, at a minimum, demonstrates the Defendants were motivated by an evil intent or motive, which further entitles Plaintiff to punitive damages under 42 U.S.C. § 1983.

565. Defendants conduct, individually, in concert, or in combination, demonstrates the Defendants' conduct was reckless or callously indifferent to the federally protected rights of others and, the participation of SSHS employees in the harassment, at a minimum, demonstrates the Defendants were motivated by an evil intent or motive, which further entitles Plaintiff to punitive damages under 42 U.S.C. § 1983, *et seq.*

566. Defendants conduct, individually, in concert, or in combination, and the manner in which they failed to act demonstrates conscious indifference to the underlying discrimination, which was based on race, color, sex, religion or national origin under Title VII, entitling Plaintiffs to seek punitive damages under the 1991 Amendments to the Civil Rights Act of 1964 for the retaliatory motivation and conduct by Defendants.

567. Defendants conduct, individually, in concert, or in combination, and the manner in which they failed to act demonstrates conscious indifference to the underlying discrimination premised upon the Plaintiffs' protected class status (race, color, national origin, and gender), which entitles Plaintiffs to seek punitive damages under the same theory advocated and approved under 42 U.S.C. § 1981a(b) and

42 U.S.C. § 1981a(a)(3) in an amount not to exceed $300,000, as provided under this statutory relief provision.

568. Defendants' conduct, individually, in concert, or in combination, and the manner in which they failed to act demonstrates conscious indifference to the underlying discrimination premised upon the Plaintiffs' protected class status (disabled), which entitles Plaintiffs to seek punitive damages under the same theory advocated and approved under 42 U.S.C. § 12177 and 42 U.S.C. § 1981a(a)(3) in an amount not to exceed $300,000, as provided under this statutory relief provision.

## **Prayer for Relief**

WHEREFORE, Plaintiffs pray for relief as follows:

1. An award of the economic damages incurred as a result of the negligence of Seeley Swan High School;

2. An award of the economic damages incurred as a result of the negligence of Missoula County Public School District;

3. An award of the special damages incurred as a result of the negligence of Seeley Swan High School and Missoula County Public School District;

4. An award of the special damages incurred as a result of the negligence of Missoula County Public School District;

5. An award of the consequential damages incurred as a result of the negligence of Seeley Swan High School and Missoula County Public School District;

6. An award of the consequential damages incurred as a result of the negligence of Missoula County Public School District;

7.      An award of past emotional distress damages;

8.      An award of future emotional distress damages;

9.      An award of past medical expenses;

10.     An award of future medical expenses;

11.     An award of costs and attorney's fees;

12.     An award of punitive damages; and

13.     For any other relief the Court deems just under the circumstances.

DATED this 21st day of January, 2021.

                                        /s/ *Lawrence E. Henke*
                                        LAWRENCE E. HENKE
                                        Attorney for the Plaintiffs

<u>DEMAND FOR JURY TRIAL</u>

COMES NOW the Plaintiffs, by and through their counsel, and hereby demand a jury trial.

DATED this 21st day of January, 2021.

/s/ *Lawrence E. Henke*
LAWRENCE E. HENKE
Attorney for the Plaintiffs

## VERIFICATION

STATE OF MT                          )
                                                    :ss
County of Silver Bow            )

The undersigned, being first duly sworn upon his oath, deposes and says:

That I have read the foregoing COMPLAINT AND DEMAND FOR JURY TRIAL and

hereby verify that the facts and information contained therein is true and correct to the best of my

knowledge and belief.

DATED this 21ˢᵗ day of January, 2021.


By _Owen Marcado_____
     Owen Marcado


Subscribed and sworn to before me this 21ˢᵗ day of January, 2021.


Danielle J. Posthumus
Notary Public for the State of MT
Printed Name: Danielle J Posthumus
Residing at: Seeley Lak, MT
My Commission Expires: 12/08/2021

DANIELLE J. POSTHUMUS
NOTARY PUBLIC for the
State of Montana
Residing at Seeley Lake, Montana
My Commission Expires
December 08, 2021
SEAL

<u>VERIFICATION</u>

STATE OF MT                          )
                                     :ss
County of Silver Bow                 )

The undersigned, being first duly sworn upon his oath, deposes and says:

That I have read the foregoing COMPLAINT AND DEMAND FOR JURY TRIAL and

hereby verify that the facts and information contained therein is true and correct to the best of my

knowledge and belief.

DATED this 21ˢᵗ day of January, 2021.

By _____
Deidra Lechowski-Marcado

Subscribed and sworn to before me this 21ˢᵗ day of January, 2021.

_____
Notary Public for the State of MT
Printed Name: Danielle J Posthumus
Residing at: Seeley Lak MT
My Commission Expires: 12/08/2021

DANIELLE J. POSTHUMUS
NOTARY PUBLIC for the
State of Montana
Residing at Seeley Lake, Montana
My Commission Expires
December 08, 2021