IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DEIDRE LECHOWSKI-MERCADO, and OWEN MERCADO,<br><br>Plaintiffs,<br><br>vs.<br><br>SEELEY SWAN HIGH SCHOOL, and MISSOULA COUNTY PUBLIC SCHOOL DISTRICT, a department of MISSOULA COUNTY, MT,<br><br>Defendants. | CV 21–10–M–DLC<br><br><br>ORDER |

Before the Court is the summary judgment motion of Defendants Seeley Swan High School and Missoula County Public School District. (Doc. 50.) Defendants seek summary judgment in their favor on all 16 of Plaintiffs' claims. (Doc. 51 at 6.) For the reasons stated herein, the Court will grant the motion.

**BACKGROUND**[1]

---

[1] Consistent with this Court's Local Rules, *see* L.R. 56.1(a), Defendants submitted a statement of undisputed facts along with their summary judgment motion. (Doc. 52.) This Court's Local Rules require litigants, in responding to a statement of undisputed facts, *only* to indicate whether the statement is disputed or undisputed, and if disputed to pinpoint cite the item in the record refuting the undisputed fact. L.R. 56.1(b)(1). Plaintiffs have created (perhaps intentionally) a factual morass by failing to adhere to this provision. For example, Defendants' statement of undisputed facts asserts that Owen is 19, was born on April 13, 2002, in Sacramento, California, and "has never been to Puerto Rico." (Doc. 66 at 1.) Oddly, despite not actually disputing any of this Plaintiffs respond that this fact is "Disputed as incomplete, misleading, and absent context," citing the Court to their own additional statement of facts. (*Id.* at 1–2.) In this additional statement, Plaintiffs assert that "Owen identifies his race as Afro-Caribbean," citing to

Seeley Swan High School ("SSHS") is a public school located in Seeley Lake, Montana and encompassed within the Missoula County Public School District ("MCPSD"). (Doc. 1 at 2; 7 at 2–3.) Relevant to this case, Owen Mercado attended SSHS for at least part of his high school education. (Doc. 1 at 5; 7 at 4.) As with many children coming of age, Owen's time at SSHS was not without difficulties. Although Owen was a talented athlete, he struggled academically, and had conflicts with his peers. There are several ostensible events that form the basis of this lawsuit.

Specifically, Plaintiffs' complaint alleges 15 incidents of racial, sexual, and national origin discrimination he was subjected to by his fellow students. (*See generally* Doc. 1.) For example, Plaintiffs allege that, while on school property and on multiple occasions, other students called him the n-word, a border jumper, a faggot, and a "fuckboi." (*Id.* at 5, 7, 9, 11, 14, 16, 23, 25–26, 28.) The complaint also refers to incidents where Owen had items stolen from him (*id.* at 13), his vehicle was vandalized with drawings of penises and the word faggot (*id.* at 18, 31), a Snapchat was taken of him with hand-drawn penises superimposed over it

---

"Doc. 65-7, p. 50, ll. 17–23." (Id. at 13.) But Document 65-7 is only 49 pages and does not even include page 50 of the relevant deposition excerpt. This is a common theme throughout Plaintiffs' statement of disputed facts. The Court will not do Plaintiffs' work for them by searching the record for factual disputes, and, when necessary, treats Plaintiffs' failure to follow the Local Rules as an admission that a fact is undisputed. *See Sturdevant v. National West. Life Ins. Co.*, 2021 WL 3677722, *5 (D. Mont. 2021); *Cf. Brown v. Dash*, 2021 WL 4899021, *1 n.3 (C.D. Cal. 2021).

(*id.* at 34), he was accosted and attacked by an eighth grader (*id.* at 39), and had a meme posted about him on an anonymous Instagram page (*id.* at 57–58).

Plaintiffs allege Defendants were made aware of these incidents and did nothing to investigate, stop, or prevent them. (*Id.* at 5–58.) In some circumstances, Plaintiffs even allege school officials participated in or encouraged these incidents. (*Id.* at 11, 16–17, 59–61.) The parties agree the events surrounding these incidents, including whether they occurred at all, when or if they were reported to school officials, and how school officials responded to such incidents, remains hotly contested. (Doc. 51 at 7–9.) The Court finds it need not wade into these disputed facts because Defendants' summary judgment motion rests far more on the law than on the facts. And, perhaps most importantly, what is undisputed is that Plaintiffs never exhausted administrative remedies related to these alleged incidents of discrimination before initiating the instant lawsuit. (*See, e.g.,* Doc. 52-12 at 2.) As explained below, this will prove fatal to most of their claims.

### PROCEDURAL BACKGROUND

Plaintiffs filed suit on January 21, 2021. (*See generally* Doc. 1.) Their complaint advances 16 claims, including: (1) 7 negligence claims (Counts I–VII); (2) one § 1983 claim (Count VIII); (3) a Montana constitutional claim (Count IX); (4) an Americans with Disabilities Act claim (Count X); (5) 4 Montana Human

Rights Act claims (Counts XI–XIV); (6) a negligent infliction of emotional distress claim (Count XV); and (7) an intentional infliction of emotional distress claim (Count XVI). (*Id.* at 63–118.) Plaintiffs also seek an award of attorney's fees and punitive damages. (*Id.* at 118–123.) Defendants have moved for summary judgment on all claims. (Doc. 50.) This motion is now fully briefed. (Docs. 50–53; 63–66; 72–73). A hearing was held on July 15, 2022. (Doc. 77.) The matter was taken under advisement and the Court is prepared to issue a ruling.

## STANDARD

This Court can resolve an issue short of trial (i.e. summarily) if "there is no genuine dispute as to any material fact" and the prevailing party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Issues that are purely legal, and do not require the Court to delve into disputed material facts, are properly resolved at the summary judgment stage. *See F.T.C. v. AMG Servs., Inc.*, 2013 WL 7870795, *3 n.6 (D. Nev. 2013). With this in mind, the Court turns its attention to the legal arguments presented.

## ANALYSIS

Before addressing the substance of Defendants' arguments in favor of summary judgment, it is important to categorize Plaintiffs' 16 claims. For purposes of analysis, the Court can split Plaintiffs' claims into two categories.

4

First, there are the 14 claims that sound in state law, including Counts I–VII, IX, XII–XVI. Second, there are the 2 claims brought under federal law, including Counts VIII and X. The Court begins with the state law claims.

## I. State Law Claims (Counts I–VII, IX, XII–XVI).

Defendants raise a single over-arching argument in support of obtaining summary judgment on all of Plaintiffs' state law claims. Specifically, Defendants argue that Plaintiffs' claims brought under Montana's Human Rights Act (Counts XI–XIV) fail because they never exhausted administrative remedies. (Doc. 51 at 10–12.) Defendants add that the Plaintiffs' remaining state law claims (Counts I–VII, IX, XIII–XVI) are really just legal recouchings of the same theories underlying their MHRA claims, such that they fall within its exclusivity and exhaustion requirements. (*Id.* at 12–17; Doc. 72 at 7–8.)[2] Plaintiffs respond that their non-MHRA state law claims need not be administratively exhausted, and that, in any event, the Defendants are equitably estopped from asserting an exhaustion defense in this case. (Doc. 65 at 9–24.) The Court disagrees.

The MHRA "is closely modeled after Title VII," *Laudert v. Richland Cty Sheriff's Dept.*, 7 P.3d 386, 395 (Mont. 2000), and prohibits all sorts of discriminatory practices. Relevant to this case, Defendants are generally

---

[2] In their briefing, Defendants did not argue Plaintiffs' state law emotional distress claims (Counts XV–XVI) are barred by MHRA exclusivity, but clarified at the hearing their MHRA exhaustion theory would bar these claims as well.

5

prohibited from denying anyone an education based on "race, creed, religion, sex, marital status, color, age, physical or mental disability, or national origin." Mont. Code Ann. § 49-2-308(1)(a) (2021); *Crowell v. School Dist. No. 7 of Gallatin Cty, Mont.*, 805 P.2d 522, 533 (Mont. 1991) (school districts are political subdivisions).

The MHRA also prohibits Defendants from "discriminat[ing] against an individual" for opposing such discrimination, or for "aid[ing], abet[ing], incit[ing], compel[ing] or coerc[ing]" such discrimination. Mont. Code Ann. §§ 49-2-301, 302. It also constitutes the exclusive remedy for the above-mentioned discriminatory acts. Mont. Code Ann. § 49-2-512(1). This is true even if a litigant premises what is really an MHRA claim under other legal theories such as the Montana Constitution. *Lay v. State Dept. of Military Affairs, Disaster and Emergency Servs. Div.*, 351 P.3d 672, 675–76 (Mont. 2015). To determine whether a claim that is not directly couched under the MHRA is nonetheless governed by the MHRA, this Court looks to the "gravamen of the" complaint. *Id.* at 675.

Here, the gravamen of Plaintiffs' complaint is that they were injured by Defendants' failure to prevent sexual, racial, and national origin discrimination against Owen, and that such discrimination essentially drove him out of SSHS and deprived him of educational opportunities to which he was entitled. In other words, the source of the injuries of which Plaintiffs complain is Defendants'

fostering of an environment in which sexual, racial, and national origin discrimination against Owen could occur. In resisting this conclusion, Plaintiffs argue that "a negligence claim" is not governed by the MHRA simply because "the negligence permitted the discriminatory conduct." (Doc. 65 at 11.)

The Court disagrees, and the Montana Supreme Court has specifically held otherwise. *Arthur v. Pierre Ltd.*, 100 P.3d 987, 991–92 (Mont. 2004) (rejecting "other tort claims," such as negligence based claims or claims for negligent and intentional infliction of emotional distress, "where those claims arise from" conduct prohibited by the MHRA). Indeed, the Court recently expounded upon this legal principle at length in a case in which Plaintiffs' counsel is also counsel of record. *See generally Rhoten v. Rocking J. Ranch, LLC*, 2021 WL 5447665 (D. Mont. 2021). In sum, the Court concludes that all of Plaintiffs' state law claims (Counts I–VII, IX, XI–XVI) are bound by the exclusivity procedures of the MHRA. *Lay*, 351 P.3d at 675–76. This presents a significant impediment to Plaintiffs' ability to prosecute those claims in this Court.

This is because the MHRA requires such claims to be brought "in conformance with the procedures set forth in the MHRA." *Id.* at 368 (citing Mont. Code Ann. § 49-2-512(1)). And the MHRA only permits the advancement of MHRA claims in a court of law after a complaint has timely been submitted to and rejected by the Montana Human Rights Commission. Mont. Code Ann. § 49-2-

7

511(3)(a). Such complaints must be brought within 180 days after the discriminatory actions complained of occurred. Mont. Code Ann. § 49-2-501(4)(a). Here, Plaintiffs concede that was never done and the time for doing so has passed. That means their state law claims are barred.[3]

In an attempt to avoid this outcome, Plaintiffs argue their failure to exhaust remedies under the MHRA should be excused and Defendants should be equitably estopped from asserting this defense. (Doc. 65 at 19–24.) The crux of this argument is that Defendants "hoodwink" parents into forfeiting their claims by not "referring them to the Human Rights Bureau with complaints." (*Id.* at 19.) In Plaintiffs' view, Defendants "purposeful[ly] conceal[]" these exhaustion requirements from parents and then capitalize on this "[k]nowledge known only to them." (*Id.* at 21.) Plaintiffs add that exhaustion should be excused because filing an MHRA complaint would have been futile, given Defendants repeated failure to act on previous complaints. (*Id.* at 23–24.) Defendants respond that there is no basis for excusing Plaintiffs' failure to exhaust their MHRA claims. (Doc. 72 at 7–11.) The Court again agrees with Defendants.

This Court cannot disregard the MHRA's clear statutory directive

---

[3] This exhaustion requirement does not generally extend to federal causes of action, such as Counts VIII and X in this case. *See Lar v. Billings School Dist.*, 2018 WL 4215648, *8 (D. Mont. 2018). Nonetheless, the MHRA's exhaustion requirement applies in federal court when, as here, this Court exercises supplemental jurisdiction over encompassed state law claims. *Hill v. Big Horn Cty Elementary School Dist. 2*, 2021 WL 835524, *9 (D. Mont. 2021) (citing *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011)).

prohibiting the judicial advancement of a discrimination claim "other than by the procedures specified in the Act." *Borges v. Missoula Cty Sheriff's Office*, 415 P.3d 976, 981 (Mont. 2018). Indeed, the Montana Supreme Court just recently held that statutory exhaustion requirements raise "threshold jurisdictional issues which may not be defeated by assertion of equitable remedies or defenses." *North Star Dev., LLC v. Montana Public Serv. Comm'n*, 510 P.3d 1232, 1245–46 (Mont. 2022) (holding that equitable estoppel cannot be used to defeat argument that plaintiff failed to exhaust "remedies specified by § 2-4-702(1)(a), MCA"). As such, the Court finds that, as a matter of law, Plaintiffs cannot save their failure to exhaust the remedies provided for in the MHRA through invocation of equitable estoppel.

Even if they could, the Court is not convinced the doctrine applies in this case. "Equitable estoppel is not favored" and application of the doctrine is "doom[ed]" unless all 6 elements are established. *Arthur*, 100 P.3d at 994. These include:

> (1) the existence of conduct, acts, language, or silence amounting to a representation or concealment of material facts; (2) the party estopped must have knowledge of these facts at the time of the representation or concealment, or the circumstances must be such that knowledge is necessarily imputed to that party; (3) the truth concerning these facts must be unknown to the other party at the time it was acted upon; (4) the conduct must be done with the intention or expectation that it will be acted upon by the other party, or have occurred under circumstances showing it to be both natural and probable that it will be acted upon; (5) the conduct must be relied upon by the other party and lead that party to act; and (6) the other party must in fact act upon the conduct in such a manner as to change its position for the worse.

9

*Id.* at 994.  The Court need not discuss every element.  Instead, the Court finds no evidence in the record that Defendants engaged in conduct designed to conceal from Plaintiffs the MHRA's exhaustion requirements for the purpose of inducing them into not properly advancing their discrimination claims.  Plaintiffs do not even argue they failed to exhaust because Defendants somehow induced them into thinking such exhaustion was unnecessary.  The requisite elements of equitable estoppel have not been established in this case, assuming the doctrine even applies (which for the reasons stated above, it does not).

As a final matter, the Court concludes there is no basis for excusing Plaintiffs' failure to exhaust their administrative remedies.  A party's belief that they might obtain an adverse disposition through the administrative process is insufficient to support a finding of futility.  *Mountain Water Co. v. Montana Dept. of Public Serv. Reg.*, 110 P.3d 20, 22–23 (Mont. 2005); *Hathaway v. Zoot Enters., Inc.*, 498 P.3d 204, 245–46 (Mont. 2021) ("The 'mere possibility of an adverse outcome' does not render the process futile").  But this all Plaintiffs offer.  (Doc. 65 at 23–24.)  The Montana Supreme Court said it succinctly in *Hathaway*, "Because the [MHRA] speaks plainly about the need to" pursue administrative remedies "before turning to the courts," it cannot be that "the likelihood of the [administrative complaint's] denial . . . raise[s] such futility as to render the requirement a legal absurdity. It would be more absurd to essentially read the

[administrative exhaustion] requirement out of the law." 498 P.3d at 246.

Based on the foregoing, the Court does not address Defendants' separate argument that Plaintiffs cannot establish the injuries necessary to sustain their emotional distress claims.

## II.    Federal Law Claims (Counts VIII and X).

Recall, Plaintiffs have two federal claims, one brought under § 1983 (Count VIII) and another brought under the ADA (Count X). (Doc. 1 at 88–94, 101–102.) Because Defendants raise a similar exhaustion argument with respect to the ADA claim as they do in the context of the state law claims discussed above, the Court will address it first.

### A.    Plaintiffs' ADA Claim (Count X).

Plaintiffs' ADA claim argues that Defendants knew of Owen's disabilities—depression and anxiety—but failed to afford him reasonable accommodations. (*Id.* at 48–49, 102.) The focal point of this claim is Defendants' failure to initiate procedures under the Individuals with Disabilities Education Act ("IDEA"). (*Id.* at 48–57.) Defendants seek summary judgment on this claim arguing that it falls within the IDEA's scope, and therefore is bound by its administrative exhaustion requirement. (Doc. 51 at 22–26.) Plaintiffs respond that they have sufficiently alleged Defendants were aware of Owen's disabilities but did not accommodate them. (Doc. 65 at 27–28.) Plaintiffs also assert their failure to exhaust is of no

11

consequence, because there has not been a "substantial deprivation." (*Id.* at 35.) The Court finds Plaintiffs' failure to exhaust IDEA remedies forecloses their ADA claim in this case.

IDEA exists to ensure "children with disabilities receive needed special education services." *Fry v. Napoleon Comm. Schools*, 580 U.S. 154, 137 S.Ct. 743, 748 (2017). Although IDEA specifically protects a student's remedies under other federal laws, such as the ADA, when "the gravamen of the plaintiff's suit is . . . denial of IDEA's core guarantee—what the Act calls a 'free appropriate public education,'" its exhaustion requirements must be adhered to. *Id.* (citing 20 U.S.C. § 1415(l). This requires, among other things, participation in an "impartial due process hearing" with school officials along with an internal appeals process. 20 U.S.C. § 1415(f), (g); *see also Payne v. Peninsula School Dist.*, 653 F.3d 863, 866 (9th Cir. 2011), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014).

Here, Plaintiffs' lawsuit specifically complains of a denial of a free appropriate public education based on Defendants' alleged failure to prevent or respond to discrimination against Owen. (Doc. 1 at 51–54.) That is not only the gravamen of Plaintiffs' suit, as explained above, but also a specific allegation within the complaint. (*Id.* at 54.) Accordingly, IDEA exhaustion is required before Plaintiffs can maintain their ADA claim. *See Fry*, 137 S.Ct. at 755–56; *see*

*also S.B. v. California Dept. of Ed.*, 327 F. Supp. 3d 1218, 1244–51 (E.D. Cal. 2018).

Plaintiffs appear to recognize this and alternatively argue their failure to exhaust IDEA administrative remedies can be excused. Exhaustion of IDEA remedies will generally be excused if: (1) exhaustion would be futile; (2) the school "has adopted a policy or pursued a practice of general applicability that is contrary to the law;" and (3) "it is improbable that adequate relief [could have been] obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought)." *Hoeft v. Tuscon Unified School Dist.*, 967 F.2d 1298, 1303–04 (9th Cir. 1992). None of these exceptions apply.

First, as held above, exhaustion is not futile simply because you might obtain an adverse decision. Second, Plaintiffs have not demonstrated a generally applicable policy of practice that renders the "basic statutory goals" of the IDEA "threatened." *Hoeft*, 967 F.2d at 1304–05. Finally, Plaintiffs have not made any showing that it is improbable the relief they seek could have been afforded, had the administrative process been undertaken. *Id.* at 1308–10. Ultimately, this Court has no basis for excusing Plaintiffs' failure to exhaust administrative remedies. Because public education "is provided on a local level," there are "strong state and local interests" in letting the local educational professionals address IDEA issues in the first instance. *Student A v. San Fran. Unified School Dist.*, 9 F.4th 1079, 1083

(9th Cir. 2021).

After all, the local educational professionals often possess the "relevant expertise" necessary to address IDEA issues that is almost always lacking in "generalist [federal] judges." *Id.*; *Shields v. Helena School Dist. No. 1*, 943 P.2d 999, 1005 (Mont. 1997) (noting courts should generally become involved in IDEA issues "only after a serious and thorough examination of the records of the proceedings undertaken by education professionals and the insights of those experts into the problems of the subject child"). That was not done here, and consequently, the Court must grant Defendant's summary judgment on Plaintiffs' ADA claim (Count X).

## B. Plaintiffs' § 1983 Claim (Count VIII).

Plaintiffs' eighth claim for relief is brought under § 1983 and complains of a violation of Owen's Fourteenth Amendment right to equal protection. (Doc. 1 at 94–98.) This claim, as pled, is similar to all others previously discussed and complains about Defendants' alleged failure to prevent or respond to reports of discrimination against Owen. (*Id.*) Defendants seek dismissal of this claim on the grounds that Plaintiffs cannot demonstrate the policy, custom, or practice necessary to sustain the claim. (Doc. 51 at 28–30.)[4] Plaintiffs respond that they

---

[4] At the hearing, Defendants also carefully addressed other constitutional provisions that could theoretically be at issue and provided argument on why such alternative constitutional theories fail. Because Plaintiffs are the master of their complaint, the Court will tie them to the specific

14

have alleged a sufficient number of discriminatory incidents, coupled with Defendants' failure to investigate and respond, such that a policy, custom, and practice has been established.

Because Plaintiffs have brought their § 1983 claim against entities of the state—namely the Missoula County Public School District—they must demonstrate that the constitutional violation they complain of stemmed from an official policy, custom, or practice. *Monell v. Department of Soc. Servs. of NYC*, 436 U.S. 658, 694 (1978). This means the allegedly unconstitutional actions must have occurred "pursuant to official municipal policy," which includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 60–61 (9th Cir. 2011). In the school district context, this requires establishment of one of three theories, including: "(1) that a district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a final policymaker." *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004). Plaintiffs have not made the requisite showing in this case.

---

constitutional provision they have elected to couch their § 1983 claim under. *See Newtok Village v. Patrick*, 21 F.4th 608, 617 (9th Cir. 2021).

15

First, there is no evidence in the record establishing that the actions complained of here were occasioned pursuant to an official policy adopted by the Missoula County Public School District. This is unsurprising, because a public school district is obviously unlikely to officially adopt a policy of failing to respond to or prevent discrimination in its schools. Second, Plaintiffs have not placed any evidence into the record establishing that the actions complained of were the result of some longstanding practice or custom. That leaves the actions of a final policymaker.

This generally requires an assessment of applicable state law. *Id.* In the school district context, final policymakers are generally the superintendent or the trustees acting pursuant to their statutory authority. *Id.* at 982–86. None of those officials are alleged to have been involved in this case. And, nonetheless, Plaintiffs have not put forward any argument that the constitutional violations of which they complain resulted from the actions of a final policy maker within the Missoula County Public School District. The actions of certain principals are mentioned, but there is no basis in the record for this Court to conclude such principals possessed any final policymaking authority. This is fatal to Plaintiffs' § 1983 claim.

## ORDER

Legal defects and shortcomings pervade Plaintiffs' case. As such, summary

judgment in favor of Defendants is required.  But the Court does not mean to minimize the difficulties Owen experienced while a student at Seeley Swan High School.  Coming of age is a difficult experience only made more difficult by challenging interactions with one's peers.  Based on the foregoing, however, the Court has no basis for affording legal relief in this case.

Accordingly, IT IS ORDERED Defendants' summary judgment motion (Doc. 50) is GRANTED.

IT IS FURTHER ORDERED that all other motions are DENIED as moot.

The Clerk of Court is directed to enter judgment in Defendants' favor by separate document and close the case file.

DATED this 15th day of August, 2022.

_____
Dana L. Christensen, District Judge
United States District Court